Hamburger v. Rinkel.

HAMBURGER et al., Appellants, v. RINKEL et al.

Division One, June 29, 1901.

1. **Will:** CAPACITY: VERDICT: FINAL. Where the issue as to testa-
tor's capacity to make a will was submitted to the jury on instruc-
tions to which no objection is urged, and there was ample evidence to
sustain the verdict, the court is concluded by the jury's finding
therein.

2. ———: UNDUE INFLUENCE: TAKING ISSUE FROM JURY. Where there
were no confidential relations existing between the testator and
his beneficiary, and there is no substantial evidence that the will
is the result of any undue influence exercised by the legatee over
the mind of the testate, the court is justified in taking the issue of
undue influence from the jury.

3. ———: PRACTICE: MISCONDUCT OF JUROR: DISCHARGE. This court
will defer largely to the discretion of the trial court, in refusing
to discharge the jury for alleged misconduct of a juror. And when
the motion to discharge the jury charges that a juror engaged in
conversation with one of the parties, but does not state that he
in anywise talked to him about the case on trial, and nothing ap-
pears to show that he did, and there is nothing suspicious about
such occurrence, the judgment will not be reversed because the
motion was denied.

4. **Evidence:** IMPEACHMENT: CONTRADICTORY STATEMENTS. The con-
tradictory statements which may be shown for the purpose of im-
peaching a witness must be of facts pertinent to the issue, and
which could have been shown in evidence as facts independently
of the inconsistency.

Appeal from St. Louis City Circuit Court.—*Hon. D. D.
Fisher,* Judge.

AFFIRMED.

*L. Frank Ottofy* for appellants.

(1) The evidence of subscribing witnesses is not conclusive either to sustain or to destroy a will. The court below erred in excluding the testimony offered by plaintiffs to impeach Dr. Bracy, one of the subscribing witnesses to the will. It was competent to show that in the presence of three witnesses he made statements out of court contradictory to his testimony as to the mental capacity of the deceased. And it was also error to exclude the evidence offered to impeach the notary, Givens. McFadin v. Catron, 120 Mo. 264; Mays v. Mays, 114 Mo. 541; Leahey v. Railroad, 97 Mo. 165. (2) The evidence shows that the testator was an habitual drunkard for years, and that the day following the execution of the will he was taken to a sanitarium afflicted with delirium tremens. There is no substantial evidence to support the judgment in this case. It is clearly the result of bias or prejudice on the part of the jury, doubtless also influenced by the juror who misconducted himself. (3) The court below erred in refusing to consider the application for a continuance founded on the misconduct of a juror during the trial, and it also erred in refusing a new trial on that ground. Although this juror testified on the *voir dire* that he did not know the defendant, George W. Rinkel, nevertheless, after recess, and in violation of the court's instructions, he engaged the defendant in an extended interview, which was prejudicial to plaintiff's case. Kennedy v. Holladay, 105 Mo. 34. (4) The court erred in giving the peremptory instruction that there was no evidence of undue influence. It is not necessary to prove its exercise by positive evidence, but it may be inferred from facts and circumstances, especially where it is shown that the testator's mind is impaired. Here the motive and opportunity for undue influence is clearly shown and the presumption is justifiable from

the evidence that it was exercised.   McFadin v. Catron, 138 Mo. 219; Sehr v. Lindemann, 153 Mo. 289; Carl v. Gabel, 120 Mo. 297.   (5)   The court erred in admitting the testimony of Dr. Sutter as to the mental condition of the deceased in April, four months subsequent to the execution of the alleged will.   Walton v. Kendrick, 122 Mo. 518; Von De Veld v. Judy, 143 Mo. 363.

*William B. Thompson* and *Ford W. Thompson* for respondents.

(1)   The trial court did not commit error in charging the jury that there is no evidence in this cause of undue influence exerted upon the mind of deceased, as charged in the petition.   (a) Because there is no evidence before the jury that defendants, or either of them, possessed any influence of any kind whatsoever over the mind of deceased.   Norton v. Paxton, 110 Mo. 456; Sunderland v. Hood, 84 Mo. 293.   (b) Because there is no evidence that defendants, or either of them, possessed any undue influence, or undue control over the mind of deceased.   McFadin v. Catron, 120 Mo. 252; Sehr v. Lindemann, 153 Mo. 276.   (c)   Because there is absolutely no evidence even tending to show that defendants, or either of them, exerted any influence, or control whatsoever, over the mind of deceased, either of a due or undue nature, either prior to or at the time the instrument was executed, and thereby caused him to make the will in question.   Carl v. Gabel, 120 Mo. 283; McFadin v. Catron, 120 Mo. 252; Mays v. Mays, 114 Mo. 536; Rankin v. Rankin, 61 Mo. 295; Meyers v. Hanger, 98 Mo. 443; Thompson v. Ish, 99 Mo. 160; Defoe v. Defoe, 144 Mo. 458; Cash v. Lust, 142 Mo. 630.   (2) Undue influence sufficient to invalidate a will must be of such a character and force as to amount to moral coercion.   Morton

v. Paxton, 110 Mo. 456; Sehr v. Lindemann, 153 Mo. 276; Carl v. Gabel, 120 Mo. 283. (3) The trial court committed no error in refusing to grant a continuance of the cause, for the reasons set out in the affidavits, charging misconduct on the part of a juror, and the court not only properly exercised its discretion in the matter, but in the absence of evidence of clear and arbitrary abuse of such discretion, is presumed to have properly exercised its functions, and its ruling upon the question will not be set aside in this court. Kennedy v. Holladay, 105 Mo. 36; Thompson on Trials, sec. 2559; White v. Wood, 8 Cushing, 413; Borland v. Barrett, 76 Va. 128; Oswald v. Railroad, 20 Minn. 5. (4) The trial court committed no error in refusing to exclude the evidence of Dr. Sutter, as to the mental condition of deceased within a reasonable time after the execution of the will. Von de Veld v. Judy, 143 Mo. 348; Sexon v. Whittaker, 30 Ala. 237; Harrison v. Rowan, 3 Wash. C. C. Rep. 586; Stason v. Hogan, 120 Ind. 207. To enable the jury to determine as to the condition of testator's mind at the date of the will, it is proper to show its condition at any time prior thereto. (5) The court committed no error in excluding the evidence offered for the purpose of impeaching Dr. Bracy, the subscribing witness to the will, because in every instance where the court refused to admit the impeaching evidence, it will be found that a proper foundation had not been laid upon cross-examination, either because: (a) The statements which the impeaching witnesses are asked to affirm, as having been made by Dr. Bracy, are not the same statements about which he was interrogated upon cross-examination, and the same that he denied, but, on the contrary, are statements that were not asked him upon cross-examination, and which he never denied making, or because: (b) The statements which he denied having made,

Vol 164 mo—26

or did not remember making, and upon which the court refused to permit him to be impeached, were not of facts relevant to the issue, and, therefore, not subject to impeachment. Starkie on Ev., secs. 200, 202; Thompson on Trials, secs. 492, 493; Greenleaf on Evidence, secs. 460, 461; 2 Taylor on Evidence, secs. 1444, 1445; Lohart v. Buchanan, 50 Mo. 202; State v. Taylor, 134 Mo. 109; Harper v. Railroad, 47 Mo. 567; McKern v. Calvert, 59 Mo. 243; Bank v. Murdock, 62 Mo. 70; Scharff v. Grossman, 59 Mo. App. 199; McFadin v. Catron, 120 Mo. 252; Seavey v. Dearborn, 19 N. H. 356; Combs v. Winchester, 39 N. H. 16; Sellers v. Jenkins, 97 Ind. 436; Staser v. Hogan, 120 Ind. 220; Attorney-General v. Hitchcock, 1 Exch. 99; Williams v. State, 73 Miss. 820; Johnson v. Spencer, 16 Mo. 32; Hildeburn v. Curran, 65 Pa. 63; Drake v. State (Tex. App.), 15 S. W. 725. The proper foundation was not laid for impeachment. Card v. Primm, 52 Mo. App. 102; Abel v. Shields, 7 Mo. 120; Clementine v. State, 14 Mo. 112; Spolen v. Railroad, 116 Mo. 617. (6) The test as to what is and what is not collateral to the issue is: "Could the fact as to which the inconsistency is predicated have been shown in evidence by other witnesses, independently of the inconsistency?" Greenleaf on Evidence, sec. 461, reiterated in each of the cases above cited. (7) If the witness has simply testified to a fact, his previous opinion as to the merits of the cause can not be regarded as relevant to the issue. 2 Taylor on Evidence, sec. 1445; Daniels v. Conrad, 4 Leigh. R. 405; Elton v. Larkins, 5 C. & P. 390. (8) Such impeaching statements do not tend to establish the truth of the facts and matters embraced therein, and do not constitute affirmative proof or evidence of the same, but merely go to the credibility of the opposing witness, even when admitted in evidence. Davis v. Hardy, 76 Ind. 272; Hicks v. Stone, 13 Minn. 434.

BRACE, P. J.—This is a statutory proceeding instituted in the circuit court, city of St. Louis, to contest the validity of an instrument of writing purporting to be the will of F. W. Hamburger, deceased, admitted to probate, in the probate court of St. Louis, on the fourth day of May, 1896, and which is as follows:

"St. Louis, January 11, 1896.

"I being a single man and of sound mind, I this day declare this my last will and testament.     I appoint Adolph Rinkel administrator over my estate.     After disposing of all my property and paying my just debts, I bequeath to Mary Gains, my aunt; Ed. Hamburger, Wm. Hamburger and Harry Hamburger, cousins; Mrs. Charlotte Henze, wife of F. W. Henze, my aunt; Fred Bartling, Henry Hamburger, Ernst Brocker and Mrs. Tellkoeter, also cousins, each and every one, one dollar.     If there are any other relatives that I have omitted I bequeath them each one dollar.

"The remainder of my estate I bequeath to my best and only friend, Geo. W. Rinkel, or his heirs.     In case of me marrying, I declare this will void.

"F. W. HAMBURGER.

"Witnesses:   J. R. Bracy, M. D., W. O. Roper."

The plaintiffs are the relatives mentioned in the will, and others who are the heirs at law of said deceased.     The defendants are the said residuary legatee, and the executor named in the will.     The grounds of the contest set out in the petition are in substance that the said F. W. Hamburger was of unsound mind at the time of the execution of the instrument; and that the same was procured to be made by the undue influence of the said George W. Rinkel.     The case was submitted to the jury, on the evidence, under instructions of

which no complaint is made, except one, which is as follows: "The court instructs the jury that there is no evidence in the cause as to undue influence upon the part of the defendant, George W. Rinkel, upon the mind of the testator, therefore, as to that issue your verdict must be to sustain the will." The jury returned a verdict sustaining the instrument, and from the judgment thereupon establishing the same as the last will and testament of F. W. Hamburger, deceased, the plaintiffs appeal.

(1)    On the trial in the circuit court, the formal execution and publication of the will by the testator was proven by the subscribing witnesses, Dr. J. R. Bracy and W. O. Roper, whose evidence, in connection with that of Mr. Givens, a notary public before whom the will was acknowledged by the testator, a few minutes after it was signed and attested, tended to prove, that at the time of the execution of the instrument, the testator was fully advised of its contents, was sober, capable of attending to his business, and of disposing mind and memory. To meet the prima facie case thus made, the defendants introduced evidence tending to prove that on the next day, or very soon thereafter, the testator manifested symptoms of delirium tremens, and in rebuttal thereof the plaintiff introduced the evidence of several witnesses who were acquainted with the deceased, tending to corroborate the evidence of plaintiffs' witnesses in chief, on the issue of testator's mental capacity to make a will. This issue was fairly submitted to the jury on instructions to which no objections are urged, and as there was ample evidence to sustain the verdict, we are concluded thereby, so far as the facts of that issue are concerned. [R. S. 1889, sec. 8889; State ex rel. v. Guinotte, 156 Mo. 513; Coats v. Lynch, 152 Mo. 166; Appleby v. Brock, 76 Mo. 314; Young v. Ridenbaugh, 67 Mo. 574.]

(2)    The testator died in April, 1896, aged about thirty

years, his father and mother, brothers and sisters having all died previous to the making of the will.

It appears from the evidence that for many years prior to the last date, the testator had been addicted to the use of intoxicants, very frequently to such an .excess as to become drunken; that otherwise he was a man of ordinary intelligence, and when not too drunk, capable of attending to his business. That he and George W. Rinkel had been schoolmates and intimate friends from their boyhood. That the Rinkels were engaged in the saloon business, and that the testator was a frequent visitor, and patron of the concern. That in the last year of his life he rented a small tenement of their mother adjoining the saloon, where he roomed and slept, boarding elsewhere. That some years before he had had a contest with his relatives over the will of his deceased father. That needing money, George W. Rinkel had assisted him in negotiating a loan from Rinkel's mother and sister, to secure which he had executed deeds of trust amounting probably to $3,000, on his two-thirds interest in a tract of land in St. Louis county, estimated to be worth from seven to ten thousand dollars, which seems to have been all the estate he had of any value. That George W. Rinkel was made the trustee in these deeds, and that some of the money thus raised was applied by the testator to the payment of his account with the Rinkels. That George W. Rinkel frequently advanced him small sums of money as he asked for it, and was sometimes repaid out of the rent coming to the testator for his interest in said real estate. That on the morning of January 11, 1896, the testator brought the instrument of writing in question to the drugstore of Mr. Roper, in the neighborhood, where Dr. Bracy was, told them it was his will, requested them to attest it, and signed it in their presence, and after they had attested it went with the doctor to the notary's office next door and acknowledged it, after which he delivered

it to the doctor with the request that he keep it, and deliver it to George if the testator died before George died, and in the meantime to say nothing about it.

There was a conflict in the evidence as to whether the body of the instrument was in the testator's handwriting. But there was not a particle of evidence tending to prove that George W. Rinkel had anything whatever to do with the will, or its production; in fact, all the evidence there was on that subject tended to prove that he knew nothing about the will until after the death of the testator. As no confidential relations existed between the testator and his beneficiary, and as there was no substantial evidence that the instrument was the product of any influence exercised by the latter over the mind of the former, under the well-settled law in this State the court committed no error in taking that issue from the jury. The citation of a few of the recent cases on that subject is all that is necessary in this connection: Schierbaum v. Schemme, 157 Mo. loc. cit. 16; Tibbe v. Kamp, 154 Mo. loc. cit. 579, 580; Sehr v. Lindemann, 153 Mo. loc. cit. 289; Mc-Fadin v. Catron, 138 Mo. loc. cit. 219.

(3) During the progress of the trial the plaintiff filed the following motion:

"And now comes the plaintiffs in the above-entitled cause and move the court to discharge the jury impaneled herein and to dismiss the same and continue the cause for another trial and for ground thereof state that one of the jurors impaneled herein named Spencer S. Shaw has misconducted himself during the adjournment of the case from yesterday, November 14, 1898, until this day, November 15, 1898, in this, to-wit, that after the adjournment in the evening of said November 14, the said Shaw accosted the defendant, George W. Rinkel, in the courtroom, calling him by name and that for ten minutes or more they were engaged in conversation, the subject-matter of

which could not be heard; that the said Shaw on the *voir dire* testified that he did not know the defendant, George W. Rinkel."

The refusal of the court to sustain this motion and to grant a new trial on account of such refusal, is assigned as error. It does not appear from the motion or the affidavits in support of it that anything was said in the conversation between the juror and Rinkel about the case on trial, nor does it appear to have been held under suspicious circumstances. The trial judge, who was acquainted with the parties, the jury and the circumstances, was in a better position to form a correct opinion in the matter than we are. He evidently saw nothing suspicious in the circumstance and we have no reason to doubt the correctness of his ruling. The matter was largely within his discretion, and there is nothing in the case to warrant a suspicion of its abuse, hence we defer to his ruling. [Kennedy v. Holliday, 105 Mo. 37 l. c.]

(4) It is assigned for error that the court refused to admit the evidence of some of the plaintiffs' witnesses of statements made out of court by some of the defendants' witnesses contradictory of their answers to certain questions asked them on cross-examination for the purpose of impeachment. The contradictory statements which may be shown for the purpose of impeaching a witness must be of facts pertinent to the issue, and which could have been shown in evidence as facts independently of the inconsistency, and not merely of opinion in relation to the matter in issue. [Greenleaf on Evidence, sec. 461; McFadin v. Catron, 120 Mo. l. c. 263, 264.] Applying this rule to the evidence in question, we find no material error in the rulings of the court thereupon. The admission of the evidence of Dr. Sutter as to the mental condition of the testator in the first part of April, 1896, is assigned as error. Evidence of the condition of the mind of a testator before or after making a

will is admitted, of course, for the sole purpose of shedding light upon his mental condition at the time of executing the will. [Von de Veld v. Judy, 143 Mo. 348.] And its probative force will be in proportion to its proximity in point of time to that date. This every sensible juror is capable of appreciating. It is difficult to say at what degree of remoteness such evidence should lose all probative value and become inadmissible. The trial court can generally best determine when the evidence is of a condition too remote to have any probative value. We are satisfied from the character of the evidence of this witness in this instance, that it had no prejudicial effect upon the verdict, and we can not say the court committed error in admitting it.

Finding no reversible error in the trial of the cause, the judgment of the circuit court will be affirmed.

All concur.