# FREDA VAN LOON, Appellant, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY.

### Division One, June 1, 1917.

1. **APPELLATE PRACTICE:** Transfer from Court of Appeals. Whether or not a decision rendered by a Court of Appeals conflicts with other appellate rulings, as one of the judges of that court deems it to do, the case when it reaches the Supreme Court upon certification is for disposition *de novo*, just as if it had been appealed to this court directly from the circuit court.

2. **VERDICT:** Against Weight of Evidence: Second New Trial. If a verdict has once been set aside on the ground that it was against the weight of the evidence a second verdict in the same law case cannot be set aside on that ground.

3. ———: ———: **Other Suspicious Circumstances.** The trial court in passing upon the motion for a new trial and in giving his reasons for sustaining the same, in writing, said that "the verdict is against the weight of the evidence, both as to the injuries and as to the facts creating a liability; however, a verdict in this case has been set aside once before on the ground that it was against the weight of the evidence, and the court would not disturb the verdict on that ground except for the fact that a party, on behalf of plaintiff, made an attempt to influence one of the jurors, and the circumstances are so suspicious with reference to this party, that in view of the fact that this verdict is against the weight of the evidence and in view of these suspicious circumstances the court sets the verdict aside." The order further recited that said party "did not reach the juror he attempted to influence" and that said juror "did not sign the verdict." *Held*, that the court set the verdict aside on the ground that it was against the weight of the evidence, and in doing so abused his discretion.

4. ———: **Attempt to Influence Juror.** A statement by a volunteer to the landlord with whom the juror was boarding that he and plaintiff's counsel were anxious to obtain a verdict for plaintiff and a request that the landlord talk with the juror about the case, there being no evidence connecting plaintiff or her counsel with such conduct, and the landlord having said nothing whatever to the juror and the juror having refused to sign the verdict, do not constitute such suspicious circumstances as authorize the court to set aside a verdict for plaintiff.

5. ———: ———: **Taking Juror to Saloon.** The mere fact that a juror and a road overseer who previously lived in adjoining rural communities, upon the juror's invitation, went to a public saloon,

271 Mo.—14

drank some beer and ate lunch, and afterwards went to a picture show together, is no ground for setting aside a verdict, the plaintiff or her counsel having nothing to do with the incident and there being no discussion of the case.

6. ———: Setting Aside: Discretion. A trial judge cannot arbitrarily set aside a verdict, but that can be done only as a result of the exercise of a wise judicial discretion.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick,* Judge.

REVERSED AND REMANDED (*with directions*).

*Brewster, Ferrell & Mayer* and *R. E. Culver* for appellant.

(1) The court had no right to set the verdict aside on the ground that it was against the weight of the evidence. Sec. 2023, R. S. 1909; Vermillion v. Jarsons, 98 Mo. App. 72; McFarland v. Accident Assn., 124 Mo. 222; Nicol & Co. v. Hyre & Co., 58 Mo. App. 134; Troll v. Protected Home Circle, 161 Mo. App. 722. (2) The fact that the court was suspicious of the conduct of J. Elliston, who had no interest in the result of the trial, who acted for the plaintiff in no way, and who, neither himself nor through another, ever spoke to any juror in the cause, did not justify the court in setting aside the verdict on the ground that it was against the weight of the evidence. There is no testimony nor circumstance, except the statement of Highsmith, that Mr. Elliston ever spoke to any person about this case, and, according to Highsmith's own statement, the desire that the plaintiff should win and that the juror Kendall should vote for the plaintiff expressed by Elliston, never reached the juror Kendall. The juror Kendall did not sign this verdict; according to all of the testimony the desire expressed by the interloper Elliston was never communicated to the juror Kendall; it had no influence one way or the other in the trial of this cause, and ought not to deprive plaintiff of a verdict honestly secured. (3) In order to raise the question on misconduct of the jury the motion for a new trial must be supported by affidavits showing affirmatively that neither the com-

plaining party nor his counsel had any knowledge of such misconduct before the jury retired. State v. Barrington, 198 Mo. 93. (4) The conduct of Robert George was not such as to even justify a suspicion. Feary v. St. Ry. Co., 162 Mo. 107.

*Robert A. Brown* for respondent.

(1) One reason assigned by the trial court for setting the verdict of the jury aside was that the verdict was tainted with ''suspicious circumstances;'' that evil influences had been at work, and that the verdict of the jury was so at variance with the great weight of the evidence as to raise the strong presumption that such influences had found their mark. Under such circumstances not only did the court have the right to set the verdict aside, but it was the court's duty to do so. Van Loon v. Railroad, 174 Mo. App. 372; In re Ellison, 256 Mo. 382; Morgan v. Ross, 78 Mo. 318; State v. Howard, 118 Mo. 136; Railroad v. Real Estate Co., 204 Mo. 565; Hamburger v. Runkel, 164 Mo. 398; Spohn v. Railroad, 87 Mo. 74; Price v. Evans, 49 Mo. 396; State v. Primm, 98 Mo. 368; Whitset v. Ransom, 79 Mo. 258; Baker v. Stonebraker, 36 Mo. 338; Garrett v. Greenwell, 92 Mo. 120; State v. McNamara, 100 Mo. 100; Chitty v. Railroad, 148 Mo. 64; Chouquette v. Railroad, 152 Mo. 257; Leahnick v. Railroad, 118 Mo. App. 611; Woodard v. Cooney, 111 Mo. App. 152; Friedman v. Pulitzer Pub. Co., 102 Mo. App. 683; Rigby v. Transit Co., 153 Mo. App. 330; Kennedy v. Holladay, 105 Mo. 24; Kreis v. Railroad, 131 Mo. 444; McGraw v. O'Neil, 123 Mo. App. 691. (2) As a second reason for setting the verdict of the jury aside the court said that it was against the weight of the evidence ''as to the injuries'' sustained by appellant, which means that the court found that the verdict of the jury was excessive. The new trial which had been granted by Judge Ramey was not granted because the verdict was excessive, but because the verdict of the jury was against the weight of the evidence. The granting of a new trial because the verdict of the jury is against the weight of the evidence does not bar the

court's right to grant another new trial because the verdict of the jury is excessive, and the courts say that excessive verdicts should be set aside. Clarkson v. Garvey, 179 Mo. App. 9; McGraw v. O'Neil, 123 Mo. App. 691; Longan v. Weltmer, 180 Mo. 322; Chlanda v. Transit Co., 213 Mo. 244; Partello v. Railroad, 217 Mo. 645; Gibney v. Transit Co., 204 Mo. 704. (3) The action of the trial court in setting the verdict aside and granting respondent a new trial will be sustained, if this can be done upon any of the grounds set out in the motion for new trial. Hewitt v. Steele, 118 Mo. 473; Lovell v. Davis, 52 Mo. App. 342; Bank v. Armstrong, 92 Mo. 265; Milling Co. v. Transit Co., 122 Mo. 258; Parker v. Britton, 133 Mo. App. 270. Respondent's demurrer should have been sustained, and the court should have granted a new trial on account of error committed in overruling the demurrer. Nugent v. Milling Co., 131 Mo. 241; Gurley v. Railroad Co., 104 Mo. 211; Warnke v. Rope Co., 171 S. W. 646; Daniels v. Railroad, 164 S. W. 154; Scroggins v. Met. St. Ry. Co., 138 Mo. App. 217. (4) There was an abundance of evidence introduced which would have sustained a verdict in behalf of respondent, and under such circumstances the discretion exercised by the trial court in granting a new trial may not now be questioned. Clarkson v. Garvey, 179 Mo. App. 9; Rigby v. Transit Co., 153 Mo. App. 330; Canterbury v. Kansas City, 130 Mo. App. 1; Karnes v. Winn, 126 Mo. App. 712. (5) The court, to the great prejudice of respondent, admitted hearsay evidence on the part of appellant, and for that reason the verdict of the jury should have been set aside. Langston v. Railroad, 147 Mo. 457; Carlin v. Bank, 86 Mo. App. 592; Smith v. Sedalia, 182 Mo. 1; Gutridge v. Railroad, 94 Mo. 473.

GRAVES, J.—This case has been duly certified to this court by the Kansas City Court of Appeals. The majority opinion sustained the action of the trial court. The dissenting judge takes a contrary view. The question involved is single, and pointedly made. Plaintiff had a verdict below, and this verdict was set aside by the trial judge. The opinion of the Court of Appeals thus

states the necessary facts (clearly, but somewhat strongly stated) for a determination of the question involved:

"Appellant sued for damages alleged to have been caused by a fall received while attempting to alight from defendant's street car. The charge is that the fall was brought about by the careless jerking or sudden starting of the car while appellant was in the act of stepping off. The answer was a general denial, and a plea that her injury, if any, resulted from her own negligence in stepping from the car before it came to a stop.

"At the September term, 1908, the case was tried before Judge Ramey and a jury, and a verdict was returned against respondent for $5700. This verdict was set aside by the trial court "for the reasons that the verdict is against the weight of the evidence, and for misconduct of the jury in arriving at said verdict."

"Thereafter the case was twice tried, once at the May term, 1909, and again at the January term, 1910, each time resulting in a hung jury.

"At the May term, 1911, the case was tried for the fourth time, and a verdict was returned for appellant in the sum of $4000.

"A motion for a new trial was in due time filed, the grounds of which, among others, were that the verdict was against the weight of the evidence; that it was so grossly against the overwhelming weight of the evidence as to shock the conscience and indicate that the jury was influenced by passion and prejudice and did not consider the evidence in the case or the instructions of the court; that the verdict was out of all proportion to the injuries proved and was so excessive as to shock the conscience and indicate that the jury disregarded both the evidence and instructions and returned a verdict based on passion and prejudice rather than on the law and the evidence; that improper and unlawful methods were employed to induce members of the jury to find a verdict for the plaintiff; that one J. Elliston made certain efforts to see and influence the jury in favor of plaintiff during the trial; that he had a list of the jurors and was endeavoring to reach them and improperly influence them

in plaintiff's favor, but that he failed to reach the juror he was attempting to reach when discovered; that, during the trial of the case, a certain man named in said motion, and who was friendly to and apparently deeply interested in plaintiff's side of the case, was frequently in the court room observing the conduct and progress of the trial, consulting with persons interested in plaintiff's case, and frequently talked with one of the jurymen, and that said actions and conversations so aroused the suspicions of defendant's officers that one of them went to the man and told him his actions had been observed and commented upon, and that they were not consistent with disinterested motives, and requested him to let the jury alone and not attempt to interfere further in the case, but that said person did not comply with the request but continued to visit saloons and theatres with said juror at night during the trial and before the rendition of the verdict; and that such facts were reported to the trial judge during the trial.

"Various affidavits were filed in support of and also in opposition to the motion for new trial. Two of respondent's affidavits, stating that neither respondent nor its attorneys learned of the attempt of said Elliston to reach or influence the jury until after the verdict was returned, were not filed within the time allowed by the court for filing affidavits. And objection is made by appellant to said two affidavits for that reason. These two were filed before the motion was passed on, and by permission of the court. It being within the discretion of the court whether he should allow them to be filed and considered, and he having done so, his action in that regard cannot be reviewed by us.

"After having said motion for new trial under advisement for some time, the trial judge sustained the same, and had his reasons therefor entered of record as follows:

" 'All the points presented by the defendant in this motion for a new trial are overruled, except that the court says as follows:

" 'That the verdict in this case is against the weight of the evidence, both as to injuries and as to the facts creating a liability. However, a verdict in this case has been set aside once before on the ground that it was against the weight of the evidence, and the court would not disturb the verdict on that ground except for the fact that a party by the name of Jay Elliston, on behalf of the plaintiff, made an attempt to influence one of the jurors; that he did not reach the juror that he attempted to influence, but that he had with him a card to which he referred, upon which he apparently had the names of several persons, presumably jurors; that he was making an effort to influence this juror on behalf of the plaintiff, and that the circumstances are so suspicious with reference to this party, Mr. Elliston, that in view of the fact that this verdict is against the weight of the evidence and in view of these suspicious circumstances with reference to the jury, the court sets this verdict aside. The juror attempted to be influenced was juror Kendall, who did not sign the verdict.'

"From the order granting defendant a new trial, plaintiff appealed."

Under the law the case as it comes from the circuit court is here for disposition *de novo,* whether the dissenting judge in pointing out that the majority opinion conflicts with other appellate rulings, is right or wrong. The law leaves the case here for determination, just as if it had been regularly appealed to this court in the first instance. However, in this case the whole fight here, as well as in the Court of Appeals, seems to be centered around the one question, as to whether or not the trial court had the right to set aside this second verdict for plaintiff under the facts before it, for the reason assigned by such court.

I. A determination of the question involved here calls for an interpretation of the reason assigned by the trial court for its action in setting aside the verdict of the jury. A verdict had once been set aside in this case

**Setting Aside Verdict.** on the ground that such verdict was against the weight of the evidence, and under our statute (Sec. 2023, R. S. 1909) a second verdict could not be set aside upon that ground. The learned writer of the majority opinion in the Court of Appeals recognized this fact in the opinion, but places his opinion upon the ground that the reason assigned by the trial court is not to the effect that he set aside the verdict on the ground that it was against the weight of the evidence. For this reason we say the reason given by the trial court must be interpreted from the language used. To have the language before us we requote it, thus:

"All the points presented by the defendant in this motion for a new trial are overruled, except that the court says as follows:

"That the verdict in this case is against the weight of the evidence, both as to injuries and as to the facts creating a liability. However, a verdict in this case has been set aside once before on the ground that it was against the weight of the evidence, and the court would not disturb the verdict on that ground *except* for the fact that a party by the name of Jay Elliston, on behalf of the plaintiff, made an attempt to influence one of the jurors; that he did not reach the juror that he attempted to influence, but that he had with him a card to which he referred, upon which he apparently had the names of several persons, presumably jurors; that he was making an effort to influence this juror on behalf of the plaintiff, and the circumstances are so suspicious with reference to this party, Mr. Elliston, that in view of the fact that this verdict is against the weight of the evidence and in view of these suspicious circumstances with reference to the jury, the court sets this verdict aside. The juror attempted to be influenced was juror Kendall, who did not sign the verdict."

We do not agree with our learned brothers, when they hold that this language does not mean that the trial judge set aside this verdict because it was against the weight of the evidence. Let us take the language of the circuit judge. He says:

"That the verdict in this case is against the weight of the evidence, both as to injuries and as to the facts creating a liability. However, a verdict in this case has been set aside once before on the ground that it was against the weight of the evidence, and the court would not disturb the verdict on that ground *except* for the fact that a party by the name of Jay Elliston, on behalf of the plaintiff, made an attempt to influence one of the jurors."

The judge here openly announces that this verdict is against the evidence. He then admits that one verdict in the case has been set aside for that reason, and then adds, "and the court would not disturb the verdict on that ground [as being against the weight of the evidence] *except* for the fact," etc. The use of the word "except" is significant. In the connection in which it is used, it makes it clear that the court was setting aside this verdict on the ground that it was against the weight of the evidence. He says that he would not use this ground to set aside the verdict, but for the appearance of the other thing mentioned, yet the whole language taken together means that he did set it aside on the ground that he thought it against the weight of the evidence. The court says in effect that he would not use such ground to set aside the verdict, but for the other incident. This can only mean that he did set aside the verdict on the ground that it was against the weight of the evidence, and that he was induced to so act and to use such ground because of the incident mentioned.

This construction of the order is borne out by the full order, including the incident named. We say this, because of the clear and plain recitals of the order. The order, so far as this incident is recited therein, shows that the incident was not the moving cause of the order. What we are now saying is based upon the order itself and otherwise. The incident therein described is that one Elliston made an attempt to influence a juror. The order recites that Elliston did not reach the juror, and further that the juror in fact voted against the plaintiff. We can only say, that if this trial judge did not mean that he was setting aside this verdict because it was, in his judgment,

against the weight of the evidence, he was extremely unfortunate in the selection of his language.

We can only judge of the order by the language used. We hold that such order did set aside the verdict on the ground that it was against the weight of the evidence, and that under the statute, supra, the trial court had no authority to thus set aside this second verdict for such ground. That this was the ground upon which the order was entered, is made clear by the other recitals therein. The order recites no other fact upon which, in the exercise of a judicial discretion, the verdict could have been set aside. This question we more fully discuss later.

II. Whilst we are firmly fixed in the view that the trial court (by the terms of its order made herein) set aside this second verdict because the judge was impressed with the notion that such verdict was against the weight of the evidence, yet we shall review the other circumstances in the case. As stated before, the whole case, as it comes from the circuit, is before us, just as it was before the Court of Appeals. That the foregoing may not be misunderstood or misapplied, we will add that we have the same questions before us that the Court of Appeals had, by reason of the appeal.

*Misconduct of Jurors.*

We do not agree with our learned brothers of the Court of Appeals, when they hold that the record discloses another ground for the action of the trial court in setting aside this verdict. In this discussion we leave out of consideration the question of the verdict being against the weight of the evidence. The case was one evidently hotly contested. Plaintiff was making a vigorous fight for a second verdict, and defendant had its agents on guard to watch the conduct of counsel and jurors.

With all the effort made in the case, but two incidents appear in the record. Defendant claims, and has some evidence to support the claim, that one Elliston tried to influence a juror by name of Kendall. His effort was this, according to defendant's showing: Kendall was stopping with one Highsmith. Elliston went to Highsmith and in a talk with him, asked if Kendall was not a juror in the

case, stating that he (Elliston) and Mr. Mayer, counsel for plaintiff, were anxious to get a verdict for plaintiff. Highsmith told him that he had better not talk with Kendall, that Kendall had a head of his own. That then Elliston asked Highsmith to talk with Kendall. By the same source it is shown that Highsmith did *not* talk to Kendall, and further that Kendall, as a matter of fact, refused to sign the verdict for plaintiff. Plaintiff's showing controverted the showing above, except as to Kendall being one of the jurors who did not sign the verdict.

The only other incident in the entire record is to the effect that one Robert L. George, supervisor of road overseers for Buchanan County, was seen talking with the juror W. J. Pritchett, who signed the verdict. It also appears that George and Pritchett at Pritchett's invitation went into a public saloon and drank some beer and ate a lunch together, and afterward went to a picture show together. Some of defendant's agents were in the saloon when this lunch was eaten, and according to plaintiff's showing sat at an adjoining table. Pritchett was from the country, as was also George prior to the time he entered upon the duties of the office. They had lived some seven or eight miles apart in the country, but their actual acquaintance was a limited one, growing out of a visit by George to Pritchett's farm. From that time they had met a few times, and met several times during the time this case was on trial, the urged occasion being this lunch and visit to a picture show. For the plaintiff it was shown that the case was never mentioned between George and Pritchett, except when Pritchett first met George, during the trial, at which time George asked Pritchett what brought him to the city, and Pritchett informed him that he was on the jury. These are the two incidents upon which is grounded the doctrine of "suspicious circumstances"—George says he had no interest in the case, and only aimed to treat Pritchett as he would any other man from the country.

It is nowhere shown that either plaintiff or her counsel had anything to do with these acts of George or Elliston. Our learned brothers of the Kansas City Court

of Appeals exonerated counsel, and of course there is not a scintilla of evidence to connect the plaintiff with these two parties.

If Elliston in fact attempted to influence a juror, he should have been punished, and from the briefs it appears that he has been. It will not do to say that his act in this case would authorize a trial court, in the exercise of a wise judicial discretion, to set aside paintiff's verdict. Plaintiff or her counsel should, at least, have been shown to have had some connection therewith.

If this Kendall incident, unconnected as it is, would authorize the destruction of plaintiff's verdict, no verdict in a circuit court would be safe. A designing defendant might arrange for just such an attempt, and upon proof of the unconnected attempt to influence a juror, have any and all verdicts set aside. We do not intimate that any such practice was resorted to in this case, but make the suggestion to show the danger that would come from permitting such unconnected circumstances to destroy verdicts.

So, too, with the George-Pritchett incidents. Those of us who have been in the country practice know that the lonesome juror from the country kills his idle time in conversation with such acquaintances as he may have in the county seat. He is of course charged not to discuss the case during its pendency, but he does not understand that to mean that he can't talk with his acquaintances, or even eat lunch, drink some beer, or go to the picture show with such acquaintances. Such juror understands, as we all understand, that he is still a man, and can do the ordinary things done by men, so long as he refrains from talking about the case on trial, and refuses to permit others to talk about it in his presence.

The George-Pritchett incidents, in view of the full explanation made by the two men, fails of substance. A trial court can not arbitrarily exercise his discretion in setting aside verdicts. His discretion must be a wise judicial discretion, and not one without foundation in fact. We shall not review all the cases. The opinion of

GANTT, J., in Railroad v. Real Estate Co., 204 Mo. 1. c. 576, will suffice. Judge GANTT thus outlines the facts:

"From the large part it occupies in the motion for new trial and the argument both in brief and orally, it appears that counsel attach especial importance to the charge of misconduct on the part of three of the jurors in drinking with and being treated by one Essen, an agent of the plaintiff, during the trial of the cause, whilst the court was adjourned or in recess.

"On this point affidavits were filed both in support and in opposition to the new trial. The affidavits for the defendants are to the effect that Essen was seen sitting at a table drinking a glass of beer with one of the jurors on one occasion, and on another all three of the jurors and Essen and others were seen taking a glass of beer in a saloon in the town of Union during the recess of the court while this cause was on trial, and one of the affidavits says that the juror and Essen were holding a serious private conversation. On the other hand, the affidavits for plaintiff tend to prove that Essen was not in the employ of the plaintiff; that at its request he had gone over the land in question and examined it with the view to testify his opinion as to the amount of damage; that owing to the fact that other witnesses had testified as he would have done and not to prolong the trial he was excused, but that he was in Union as a witness; that he was sworn with some twenty other witnesses and each of the jurors swears that he did not know or remember that Essen was sworn as a witness; but they each, as well as Essen, swear that while they took a glass or two of beer together the cause or trial was not mentioned between them; the jurors testifying that neither of them had violated the direction of the court as to conversing about the case. In addition to this the affidavits of other persons tend to show that the jurors are all men of good character and occupy responsible positions as business men. Essen admitted his friendliness to plaintiff, but denied that he had been or was to receive compensation for favoring the enterprise. The jurors testified they did not know Essen was an agent or in the em-

ploy of plaintiff.   This is a sufficient statement to indicate the issue."

At page 578 of that opinion Judge GANTT says:

"Of course we all agree that the courts cannot be too careful to see that juries are not only free from outside or improper influences but even from a suspicion of such a thing, but when it appears that the conduct of the jurors when explained was wholly free of any reference to the cause and in no manner affected their verdict, *it would be unjust to punish an offending litigant for such a breach of propriety,* and this has been the course of decision in this court.   [State v. Upton, 20 Mo. 397; Morgan v. Ross, 74 Mo. 318; Kennedy v. Holladay, 105 Mo. 24; Borland v. Barrett, 76 Va. 128; Hamburger v. Rinkel, 164 Mo. 398.]" The italics are ours.

So in the case at bar it would be unjust to the plaintiff to have her verdict set aside for things with which she had no connection, and things which when fully explained, had no connection with or effect upon the case.

We do not believe that the discretion exercised by the learned trial judge in setting aside this verdict, was that wise judicial discretion which is recognized in the law. The order granting the new trial should be reversed and set aside, and the cause remanded, with directions to the circuit court to reinstate the verdict and enter judgment thereon.

It is so ordered.   All concur, *Bond, P. J.,* in paragraph one and in result.