**Alfred R. HESSE et al., Appellants,**

v.

**Elmer W. WAGNER et al., Respondents.**

**No. 55722.**

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1971.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 20, 1972.

Thomas, Busse, Cullen, Clooney, Weil & King, Donald H. Clooney, S. M. Thomas, St. Louis, for appellants, Alfred R. Hesse and Mary Hesse Finley.

Gus O. Nations, Clayton, for appellants, Darla J., Donna M. and Debra A. Burian.

Murphy & Kortenhof, Edward E. Murphy, Jr., Joseph M. Kortenhof, St. Louis, for respondent, Elmer W. Wagner.

Brainerd W. LaTourette, Jr., St. Louis, for respondents, Alfred Henry Hesse, Robert Joseph Hesse, Kathryn Hesse Roberts, Blanche Cecilia Hesse, and William Carl Hesse.

HENRY I. EAGER, Special Commissioner.

This is an action contesting the will of Clara G. Sittig, who died on April 7, 1969.

The will was executed on July 26, 1967. Plaintiffs are her heirs at law, exclusive of those who were also legatees; those legatees were named as defendants. Various grounds of invalidity were alleged, but those relied on at the trial and submitted to the jury were mental incapacity and undue influence allegedly exercised by the defendants Wagner and the St. Louis County National Bank, both of whom were appointed as executors. By a nine-man verdict the jury upheld the will, and the plaintiffs, after an unsuccessful argument of their motion for a new trial, appealed. The five relatives of decedent who were named as defendants have joined in and approved the brief and contentions of the appellants-plaintiffs.

In the will Mrs. Sittig bequeathed $100 for masses, $1,500 to each of her five nieces and nephews named as defendants, and $1,500 to a nephew of her husband, Francis William Muehling. She bequeathed the entire residue to Elmer W. Wagner or, in case of his death, to his wife and children; Wagner was a nonrelative. In a previous will dated April 17, 1965, and executed contemporaneously with a matching will of her husband, Irving P. Sittig, she bequeathed the residue to her husband and, in case of his prior death, to her five nieces and nephews previously referred to and the nephew of her husband. Thus, the vital change was that the six nephews and nieces were precluded from participation in the residuary estate and were limited to bequests of $1,500 each.

The decedent had met defendant Wagner in 1957 when he was employed in the trust department of a St. Louis bank; she and her husband went there to ask a question about income taxes and were referred to Wagner. Thereafter he prepared their income tax returns, and continued to do so for her after Mr. Sittig's death. In later years he visited her home frequently; he testified that this was only when she called for him. He helped her with her business matters which were relatively simple, wrote checks for her to sign, made out de-

posit slips, noted her dividends and, on occasion, helped her with her husband. The latter was a confirmed alcoholic, and had to be picked up off of the floor from time to time. Obviously Mrs. Sittig's life was adversely affected by that state of affairs. Various others helped her in the home. Mr. Sittig died on May 16, 1967. When the 1965 wills were prepared, Wagner recommended to Mrs. Sittig a list of three lawyers, one of whom was Hobart L. Fosher. Mrs. Sittig called Mr. Fosher and he prepared the wills and attended to their execution. Wagner took him to the home and introduced him. Wagner had worked with all three of the lawyers to some extent, but had been a rather close friend and associate of Fosher for 35 years and had been the executor in at least two substantial estates in which Fosher drew the will and was the attorney. Mrs. Sittig apparently called Fosher direct when the second will was drawn. After talking with her, Fosher called Wagner, told him that the decedent was naming him as the residuary legatee, and asked the names of his wife and children (as contingent beneficiaries). Wagner and Mr. Sittig had been named as executors in the first (1965) will; Wagner and the defendant bank in the one now in dispute. The value of the estate involved is said to be $140,000–$150,000. Mrs. Sittig had no children.

There was no direct evidence of undue influence; usually there is none. Undue influence must generally be inferred from all the facts and circumstances. Wilhoit v. Fite, Mo., 341 S.W.2d 806, 813; Houghton v. West, Mo., 305 S.W.2d 407. Wagner admitted in his testimony the existence of a confidential relationship. The trial court deemed the evidence sufficient for the submission of the issue of undue influence, and it was submitted to the jury.

The real controversy in the case involved the *time* when Mrs. Sittig became mentally incapacitated. It was substantially admitted that she did so at some time before her death. There is no question here as to the sufficiency of the evidence

for submission of the issue, and we may thus refer to that evidence in very general terms. The contestants (whom we shall refer to as plaintiffs) produced witnesses who testified: that prior to July 26, 1967, decedent's mental condition had deteriorated; that she "saw" groups of people in her back yard and in a tree, and thought (and said) that her mother and her Aunt Kate were in her home when they had been dead for years; that she talked to her husband and told him to "shut up" after his death, thought people had taken things from her, and called friends or relatives at midnight or later; that she thought the people on TV were people in her house and asked if they should be fed; that she became very sloppy in her dress and housekeeping, and that she had little idea of time or dates; that she was completely unable to take care of any of her affairs; that she did not want anyone to know of her husband's death and, before his death, completely forgot about having received a list of foods which a doctor had given to her to use for him. A physician who had examined her occasionally since 1951 testified that she had Parkinson's disease, arteriosclerosis and osteoarthritis (all of which were chronic, degenerative diseases), that she could not follow directions in his office, and that in October 1966 she told him that she had to hurry home and take care of "Aunt Katie," who was dead. Upon a hypothetical question this witness stated that the decedent was of unsound mind at the time she executed the will; he later stated that from his own observations she was then of unsound mind, and that he suggested that she see a neurologist. This was more or less corroborated by a specialist in nervous and mental diseases who saw her first in February 1969, shortly before her death. The evidence showed that she had been helped in many ways, before and after her husband's death, by Mr. Sittig's nephew and his wife (the Muehlings), by neighbors, and by others.

For the defendants there was evidence that Mrs. Sittig was normal mentally at

and after the time of the execution of the will, and that her mental deterioration did not begin until 1968, the year after the execution of the will. It finally became apparent to all concerned that she needed extensive care and perhaps hospitalization, and the Muehlings and one or more neighbors suggested that fact to Mr. Wagner. A neighbor arranged to put her in the hospital and, upon her discharge there, Mr. Wagner had her placed in a nursing home, where she died. On February 12, 1969, Mr. Wagner procured from Mrs. Sittig a power of attorney giving him authority to enter her safe-deposit box. This was identified and discussed in evidence but not received in evidence.

After decedent's Aunt Katie Donne died, Frederick Hesse, a brother of decedent, filed a will contest action; Mrs. Donne had left all or most of her estate to Mrs. Sittig. The will was apparently upheld, but the evidence indicates that the suit generated some bitterness on the part of Mrs. Sittig towards her brother. Various witnesses testified, however, that she did not indicate any animosity towards her nieces and nephews and apparently was well disposed towards them. This is also indicated by the terms of the two wills.

Seven points of supposedly specific errors are raised and briefed by the appellants. We shall not list them here, but will state each as we take it up.

■ The first one concerns a question and answer in the cross-examination of Dr. Walter L. Moore, a neurologist. In the question counsel for defendants hypothesized the various facts which, upon their theory, had been shown in evidence and thereafter asked the witness, " * * * and, she was capable of executing solemn documents such as a will?" The witness answered "Yes, sir, if she understood it." An objection was made (after the answer) that the question invaded the province of the jury. Overlooking the time of the objection, the question was improper, for the necessary answer, yes or no, constituted the very thing that the jury was to decide. Hamon v. Hamon, 180 Mo. 685, 79 S.W. 422; Wigginton v. Rule, 275 Mo. 412, 205 S.W. 168; Blackiston v. Russell, 328 Mo. 1164, 44 S.W.2d 22; Baptiste v. Boatmen's Nat'l Bank of St. Louis, Mo., 148 S.W.2d 743; Gillmore v. Atwell, Mo., 283 S.W.2d 636. The difficulty with plaintiffs' position, however, is that the same witness on direct examination answered their counsel's hypothetical question by stating: "She was of unsound mind and was not capable of making a document of that serious import." The first part of the answer was responsive, the latter part was not. No one moved to strike that part of the answer, and we must presume that plaintiffs' counsel elected to leave it in the case. Opposing counsel chose to converse that answer with their own hypothetical question in form similar to the previous answer. Plaintiffs were responsible (directly or indirectly) for putting the matter in the case, and defendants' question and answer constituted invited error, for which there may be no reversal. Clark v. Crandall, 319 Mo. 87, 5 S.W.2d 383; Pinson v. Jones, Mo., 221 S.W. 80; Wigginton v. Rule, 275 Mo. 412, 205 S.W. 168. As a matter of fact, the answer was so qualified that it did not mean very much.

■ The next point is that the Court erred in excluding certain proffered evidence of Robert J. Hesse and Blanche Hesse concerning the condition of Mrs. Sittig in September 1968 (Robert) and December 1968, and January 1969 (Blanche) upon the ground that the evidence was too remote. The will was executed in July 1967. These two witnesses had not seen the testatrix for years until the times indicated. The first offer of such evidence was excluded because there had been no evidence of incapacity at or prior to the date of the will to connect up the proffered testimony. After other witnesses had testified to conduct indicating mental incapacity at or prior to the time of the execution of the will, plaintiffs offered to recall these witnesses. The Court then

simply ruled that the evidence would be too remote and excluded it. It then stated that it would permit a witness who had known and seen the decedent over a "period of time" to give his observations on through to the end, but that isolated observations at such late dates would not be permitted. Counsel cites cases holding that evidence of mental incapacity "long prior" to the time of a will and closely approaching it, as well as "shortly subsequent thereto" is admissible. Rose v. Rose, Mo., 249 S.W. 605; Dunkeson v. Williams, Mo., 242 S.W. 653; Erickson v. Lundgren, Mo., 37 S.W. 2d 629; Byrne v. Fulkerson, 254 Mo. 97, 162 S.W. 171. But, as stated in Whitacre v. Kelly, 345 Mo. 489, 134 S.W.2d 121, loc. cit. 124, such evidence is of no probative value "unless it raises a reasonable inference as to mental condition at the time of signing the will." See also Hennings v. Hallar, 347 Mo. 827, 149 S.W.2d 338; Adams v. Simpson, 358 Mo. 168, 213 S.W.2d 908; Carlson v. First National Bank of Kansas City, Mo., 355 S.W.2d 928. It was within the permitted discretion of the trial court to exclude this evidence, since all of such observations were of a time more than a year after the will was executed and the witnesses had not been in touch with the testatrix for years previously. See, particularly, Hamburger v. Rinkel, 164 Mo. 398, 64 S.W. 104, 106. This point is denied.

■ The third point is that the Court erred in excluding the power of attorney procured by Mr. Wagner from decedent in February 1969, specifically permitting him to enter her safe-deposit box. Defendants say that it was never properly offered in evidence. There is also considerable argument concerning its admissibility. We think it was properly admissible if identified and tendered, as relating to a supposed plan of Mr. Wagner to obtain decedent's property. When first offered, an objection (that it was irrelevant) was sustained but the Court said "There is no evidence in respect to it at all," which seems to be corroborated by the record; at

that time one witness had recognized his wife's signature thereon "scratched out." Later, in defendants' case, the document was identified, and it was shown that it had been received by the Bank to which it was addressed; another witness identified it, and an objection at that time was overruled. We do not find, however, that plaintiffs ever offered the exhibit in evidence after it was identified; in fact, when counsel offered to show to the jury plaintiffs' Exhibits 1, 2 and 6 at the close of all the evidence, they did not include this Exhibit 4. The only ruling of the Court after the exhibit was identified held it admissible. There can be no error where there was no proper offer. Since the document was discussed and referred to in evidence three or four times, we doubt that even its exclusion would have constituted prejudicial error.

■ Appellants' next point concerns the actions and conduct of the Court during the testimony of two of plaintiffs' witnesses. Its conduct, they say, was not impartial, but showed a distinct hostility to and prejudice against those witnesses and, indirectly, towards plaintiffs' case. During the examination of R. C. Sellinger for plaintiffs the Court made the following remarks: "Just a moment. Let him answer the question. He didn't ask that, the witness just stated it. We have an old unresponsive witness. We are having all kinds of difficulties with a witness who has been volunteering and making all kinds of statements and due to his age is a problem and let's proceed and get the answer." The remarks should not have been made, at least in that form. Angela Muehling, the wife of Mr. Sittig's nephew, testified at length; she had probably spent more time with Mrs. Sittig during her later years and had done more for her than any other person. She testified in much detail and at times her testimony was emotional and perhaps seemed a little exaggerated. We must ascertain the Court's reactions and conduct from the colloquies in chambers during the trial and upon argument of

the motion for a new trial. In such cases it is always difficult to get at the true facts, for we have no sound recordings or photographs. We find, however, that the record here supports a fair inference that, during the testimony of Mrs. Muehling, the Court exhibited by facial expressions (and perhaps otherwise) a distinct feeling of disbelief, exasperation and perhaps disgust. It would extend this opinion beyond reasonable bounds to recite all the discussions between Court and counsel; however, at one point in the discussions the Court said: "THE COURT: I am going to put on the record for the Appellate Court, as far as credibility goes, that last witness is totally and utterly and impossibly lacking in any credibility whatever." There is further a reasonable inference that these actions may have affected the verdict of the jury. The requirements and rules governing the conduct of our courts during trial are recited fully in the following cases: Fleetwood v. Milwaukee Mechanics Ins. Co., Mo.App., 220 S.W.2d 614; Harms v. Simkin, Mo. App., 322 S.W.2d 930; Duncan v. Pinkston, Mo., 340 S.W.2d 753; State v. Montgomery, 363 Mo. 459, 251 S.W.2d 654. These rules are well known to the Bench and Bar and need not be repeated here. The whole matter is determined in this case, however, by the fact that plaintiffs' counsel did not at any time move for a mistrial, or ask any other relief; actually, nothing short of a mistrial could have remedied the situation. It is indicated in the record that counsel advisedly refrained from asking for a mistrial. We are, therefore, compelled to deny the point.

 Mrs. Sittig's brother, Alfred R. Hesse, was a witness for plaintiffs; he was also a plaintiff. He testified to a few formal matters, including relationships. It appears that he had probably seen the testatrix only twice over a period of many years, and he made no pretense of relating facts indicating her condition or circumstances. On cross-examination, counsel read to him at length those portions of the petition alleging mental incapacity, that decedent was under the domination and control of Mr. Wagner, and that the will was not properly executed; as to each part, he asked the witness whether *he* had any knowledge of any facts supporting those allegations. The expected and actual result was to force the witness to say that he did not. The same course was pursued somewhat more briefly in the cross-examination of Mary Elizabeth Finley, a niece, also a plaintiff; she had not seen or heard from decedent since 1961. This cross-examination constituted error. The pleadings in a case are for the Court and the parties, not the jury; they define and limit the issues. Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75; Littell v. Bi-State Transit Development Agency, Mo.App., 423 S.W.2d 34; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889; Wahl v. Cunningham, 332 Mo. 21, 56 S.W.2d 1052; Macheca v. Fowler, Mo., 412 S.W.2d 462. Allegations from abandoned pleadings are sometimes received in evidence but only as admissions against interest. Knorp, Wahl, supra. It is conceivable that a statement of fact directly against a party's interest may even be admissible from a current pleading. We are not impressed with the cases cited by defendants; they do not alter the principles we have stated. The allegations involved here were the essential allegations made in plaintiffs' own favor and constituted the essence of their case. As indicated, the procedure was improper. We have given much consideration to the question of prejudice, and have decided that the error was not prejudicially reversible. While the effort was apparently one to make these plaintiffs look somewhat foolish for lack of knowledge, the jury also knew that they did not pretend to have any personal knowledge of the testatrix's condition in her later years, and that they relied upon other witnesses. The examination referred to was followed by the testimony of others who did supply the facts relied upon by the plaintiffs; and any juror with reasonable common sense knows that lay plaintiffs do not draw petitions themselves and frequently do not pre-

tend to know all of the facts personally. Such a practice as this is not proper and should not be pursued, but the point is denied here for lack of prejudice.

■ A point is also made that improper leading questions were permitted in the examination of the witnesses to the will, who testified to prove it up. This was a more or less formal part of the total evidence. Only four or five objections were made and some of these were late. On one timely objection the witness did not merely say "yes," but testified to what was actually said; various other leading questions were not objected to. The whole matter is resolved by the principle that the trial court has much discretion in permitting leading questions, and much depends upon the circumstances and subject matter. Sheets v. Kurth, Mo., 426 S.W.2d 103. We do not find here that such discretion was abused.

■ The last point made is that the Court unduly restricted plaintiffs in the admission of evidence to show the relationship between Mr. Wagner and Fosher (the lawyer who drew the will), and the extent of their relations. The only matter of which plaintiffs specifically complain is that they were not permitted to show the size of another estate in which Wagner was an Executor and one Scharf was the attorney (which seems more or less irrelevant on its face); Scharf was one of the three lawyers recommended to Mrs. Sittig by Wagner. The Court recognized the propriety of showing that Wagner and Fosher had been rather closely associated and permitted evidence to the effect: that they had known each other well for 35 years; that Fosher was introduced to the Sittigs by Wagner; that he was one of the

three lawyers recommended to them; that the two had worked together at a St. Louis bank for years; that they had referred business to each other from time to time, tax matters and law business; that they were Co-Executors of the (substantial) estate of Evelyn Means, in which Fosher drew the will and was the attorney; that Fosher called Wagner almost immediately after he had gotten the necessary information for the controverted will, and told him that he was to be the residuary legatee; that Wagner was an executor and Fosher the attorney in another estate (Paush) in which Fosher drew the will; that Wagner had also worked with Mr. Scharf in two estates in which he (Wagner) was named as Executor. In declining, after all this evidence, to let counsel show the amount involved in an independent probate proceeding in which Scharf was the attorney, the Court acted entirely within its discretionary power. Of course, the interest or bias of a witness may be shown, State v. Pigques, Mo., 310 S.W.2d 942, but a broad discretion is vested in the trial court as to the extent of cross-examination. State v. Cummings, Mo., 445 S.W.2d 639; State v. Papin, Mo., 386 S.W.2d 355. There was no error in excluding this very limited portion of the evidence so offered.

Having considered all of appellants' points, we find no reversible error.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.