A. J. KING v. JOHN E. MANN, Appellant.

Division One, July 30, 1926.

**1. NEW TRIAL: Grounds: Appeal.** On appeal from an order granting a new trial, wherein the record fails to show the reason or ground for granting it, the order will be sustained if it ought to have been sustained for any of the grounds assigned in the motion for a new trial.

**2. ———: Weight of Evidence.** Where a verdict has once been set aside on the ground that it was against the weight of the evidence, a second verdict cannot be set aside on that ground. But a new trial having twice been previously granted on other statutory grounds, the verdict at a third trial may be set aside on the ground that it is against the weight of the evidence.

**3. ———: ———: Absent Record Recitals.** Where the record shows that a new trial was granted to plaintiff at two previous terms of the circuit court, but fails to show the grounds or reasons why they were granted, it will not be assumed, on an appeal from an order granting plaintiff a third new trial, that the verdict in either of the two previous trials was set aside on the ground that it was against the weight of the evidence, for the new trials may have been granted on the statutory ground that the court believed the jury had erred in a matter of law or had been guilty of misbehavior.

**4. ———: Failure to Specify Grounds.** Where there is nothing in the record to show that previous new trials were granted on the ground that the verdict was against the weight of evidence, and the motion for a new trial on the present appeal assigns as grounds, among others, that "the verdict is against the weight of the evidence" and "the verdict is the result of passion and prejudice," and the record does not recite for what reasons or upon what grounds the motion was sustained, it will be presumed that the trial court in sustaining the motion did not violate the statute, and the record will be reviewed for the purpose of determining whether the order for a new trial can be sustained on either ground.

**5. DIRECTED JUDGMENT: Ending Expensive Litigation.** Where plaintiff sued defendant for a fee of one hundred dollars, and the case was tried once in the court of a justice of the peace and four times in circuit courts, and three times appealed to courts of appeals, it is apparent that the expense of the litigation (not to speak of the time and cost to the State of jurors and judicial officers) far exceeds the amount sued for, and the suit should

be ended by a directed judgment if that can be done in accordance with established law and procedure.

6. ———: **Issue of Fact.** In an action at law the trial court cannot give a peremptory instruction to the jury to return a verdict for plaintiff, nor can the appellate court direct the trial court to enter judgment for plaintiff, where the issue is one of fact and the evidence is contradictory.

7. ———: ———: **Contract: Performance: Abandonment.** Where one contracts to serve another until a particular undertaking is accomplished he cannot recover the agreed compensation if he wilfully and without cause abandons the work before the performance of the service agreed to be rendered; and this rule is especially applicable to an engagement of an attorney by his client.

8. ———: ———: ———: **To Bring Suit: Demurrer to Petition: Voluntary Nonsuit: Abandonment.** A corporation had given a deed of trust upon all its properties, and upon its foreclosure six or seven of its stockholders had purchased them. Defendant was a large stockholder, but not one of the purchasers, and hence was about to lose his holdings in the capital stock. He claimed that the corporation had sufficient moneys on hand to pay the interest due upon the mortgage debt, and that the default in the payment of the interest and the subsequent foreclosure sale were a scheme to deprive him of his interest in the corporation, and employed plaintiff, an attorney, to bring a suit against the purchasing stockholders to set aside the deed of foreclosure. Plaintiff testified that defendant thought such a suit would compel the purchasing stockholders to compromise and reimburse him for money lost, and wanted suit brought to tie up the properties, so that they could not re-incorporate, and he agreed to draw up a petition that would tie them up. He drew up and filed a petition, caused summons to be issued and served, and filed a **lis pendens.** Defendant testified that plaintiff was to prosecute the case to a final conclusion, and was to be paid one hundred dollars if he lost it, and two hundred dollars if he won. A demurrer to the petition was filed and sustained. An amended petition, containing material allegations not contained in the original, was filed, and a demurrer thereto filed, and argued at the next term, and plaintiff testified that the court indicated that the demurrer would be sustained, and he thereupon took a voluntary nonsuit, in order that the case might be renewed within a year; and this testimony is not contradicted, but it is uncorroborated, nor is it admitted by defendant, who testified and insists that plaintiff had voluntarily abandoned the action, and had dismissed it without his knowledge or consent. Plaintiff sues for one hundred dollars, on the theory that the contract of employment was that he was to receive that sum in any event. The jury returned a verdict for defendant, which the trial court set aside, and from an order granting a new trial defendant appealed. **Held,** that the defendant's testimony would not justify this court in remanding the cause with directions to enter judgment for plaintiff, since the jury may have disbelieved plaintiff's testimony that the trial court had ruled that the amended petition did not state a cause of action, and may have believed defendant's testimony that plaintiff had voluntarily abandoned the case, both of which were issues of fact, and questions for the jury to determine.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2557, p. 665, n. 8; Section 2733, p. 783, n. 54 New; Section 2736, p. 785, n. 3 New; Section 2813, p. 832, n. 47 New; Section 2816, p. 833, n. 57; Section 2830, p. 844, n. 66; Section 3223, p. 1186, n. 66; Section 3264, p. 1213, n. 76 New. **Attorney and Client,** 6 C. J., Section 357, p. 764, n. 35, 36, 37, 38. New Trial, 29, Cyc., p. 731, n. 89; p. 732, n. 92; p. 1009, n. 54.

Transferred from Springfield Court of Appeals.

Affirmed and remanded.

*Hargus & Johnson* for appellant.

(1) There can be but one new trial granted to the same party because the verdict is against the weight of the evidence. Sec. 1454, R. S. 1919; O'Donnell v. United Rys. Co., 152 Mo. App. 506; Van Loon v. Power Co., 271 Mo. 209. (2) There was a prior new trial granted plaintiff in this cause on the ground that the verdict was against the weight of the evidence. King v. Mann, 199 S. W. 705. (3) In the absence of due cause an attorney's abandonment of the case of his client will bar recovery. Blanton v. King, 73 Mo. App. 150; King v. Mann, 207 S. W. 836. (4) Whether or not an attorney was employed by the defendant, and if so, whether the latter agreed to pay, and what were the terms of the contract, and whether the services were rendered and their value, and whether an attorney was justified in withdrawing from the case, are all questions of fact for the jury. 4 Cyc. 104; King v. Mann, 207 S. W. 836. (5) A trial court cannot arbitrarily exercise its discretion in setting aside a verdict. Van Loon v. Power Co., 271 Mo. 209; Edwards v. Mo. Pacific, 82 Mo. App. 486.

*W. M. Bowker, L. E. Crook* and *John A. Gilbreath* for respondent.

(1) Where an order granting a new trial does not specify the ground on which it is sustained, on appeal the order will be sustained if it is good upon any ground set out in the motion. Lead Co. v. Webster, 193 Mo. 351. (2) Whenever the trial court is satisfied that the verdict of the jury is the result of passion and prejudice it is its duty to grant a new trial; and such discretion of the trial court on appeal will not be reviewed, unless such discretion has been abused or arbitrarily exercised. Rigby v. Transfer Co., 153 Mo. App. 330; Claybaugh v. Railroad Co., 56 Mo. App. 630. (3) The fact that a new trial has been granted once because against the weight of the evidence does not prevent granting a new trial for other reasons. Culp .v. Supreme Lodge, 198 Mo. App. 77; Sec. 1453, R. S. 1919. (4) The trial court has wide discretion in passing on motions for new trials, and will not be interfered with by the appellate court unless in direct conflict with established law or the result of abuse of judicial discretion; and the presumption will be, in the absence of a showing, that the trial court did not violate the statute, Sec. 1453, R. S. 1919, in granting a second new trial. Oliver v. Railroad Co., 211 S. W. 699. (5) Ordinarily, litigants appear by attorneys, who act for them. Litigants are therefore necessarily charged with any knowledge possessed by their attorneys in regard to the orders of the court relating to the trial of the causes, and Dillon must therefore be charged with the knowledge of his local attorney, although that attorney had failed to communicate the knowledge to him. Dillon v. Hawkins, 227 S. W. 760.

SEDDON, C.—This action has had a long and tortuous career through the courts of the State. It is one to collect an $100 attorney's fee. It was commenced originally against John E. Mann and his father, W. T. Mann, as co-defendants, on June 12, 1915, in a justice-of-the-peace court in Vernon County, from whence it was appealed to the Circuit Court of Vernon County and tried *de novo*, resulting in a verdict and judgment for both defendants on October 8, 1915. On the same day, plaintiff filed a motion for a new trial, which was sustained and a new trial granted, but the record does not show the grounds assigned by the trial court for its order. The case was then removed on change of venue to the Circuit Court of Bates County, and a trial there had, again resulting in a verdict and judgment for both defendants on November 24, 1916. On February 6, 1917, the latter court sustained plaintiff's motion for a new trial, without assigning a reason or ground therefor (so far as the record shows) and defendants appealed to the Kansas City Court of Appeals, where the order granting a new trial was affirmed, the latter court holding that, no grounds having been assigned by the trial court in granting a new trial, it would be assumed, inasmuch as the motion for a new trial complained that the verdict was against the weight of the evidence, that the trial court *may* have sustained the motion on that ground, and if so, that was a matter exclusively within the discretion of the trial court and was not reviewable on appeal. [King v. Mann, 199 S. W. 705.] The order of the trial court having been affirmed, the cause was returned to the Circuit Court of Bates County for a second start, resulting in a verdict and judgment on February 18, 1918, for W. T. Mann, and a directed verdict and judgment for plaintiff against defendant John E. Mann. Defendant John E. Mann appealed to the Kansas City Court of Appeals, but plaintiff not appealing from the judgment in favor of the father, W. T. Mann, the latter drops out of the case. The Kansas City Court of Appeals, on the second appeal, held that the trial court erred in directing a verdict for plaintiff against defendant John E. Mann, reversed the judgment and remanded the cause for a retrial. [King v. Mann, 207 S. W. 836.] Thus, the action returned to the Circuit Court of Bates County for a third start, from whence it was removed by plaintiff on change of venue to the Circuit Court of St. Clair County, again resulting in a verdict and judgment for the sole defendant, John E. Mann, on December 8, 1920. Plaintiff filed a motion for a new trial, which was sustained on April 8, 1921, the trial court assigning no reason or ground for its action. Defendant appealed to the Springfield Court of Appeals, which court ruled that the order of the trial court granting a new trial was proper, but indicated that it would be the order of the appellate court that the cause be remanded with directions to the trial court

to enter a judgment for plaintiff for $100, with interest and costs, were it not for the fact that the appellate court deemed its opinion and judgment to be in conflict with the decision of the Kansas City Court of Appeals in King v. Mann, 207 S. W. 836. Therefore, because of such conflict, the Springfield Court of Appeals certified the cause to this court for final determination. [King v. Mann, 235 S. W. 506.] Thus, it appears that the action has been tried once in a justice's court, four times in three different circuit courts, has been ruled three times in two different courts of appeals, and now we are afforded an opportunity of trying our hand and judicial minds upon this momentous action.

The facts are somewhat briefly stated in the three opinions of the several Courts of Appeals herein cited. Stated more fully again, they are as follows:

Defendant was a stockholder in a meat-packing corporation, which had executed a mortgage or deed of trust in May, 1913, for $6,000 upon its real property, plant, equipment, meats and bills receivable. This mortgage had been foreclosed for default in payment of interest, and some six or seven of the stockholders and directors of the corporation had purchased the properties, in the name of one of them, at foreclosure sale for the sum of $15,000. Defendant, who was the owner of $6450 (par value) of capital stock in the corporation, was not one of the purchasing stockholders at the foreclosure sale held on January 4, 1915. Hence, he was in position to lose his holdings in the capital stock of the corporation. Defendant claimed that the corporation had sufficient funds on hand to make the interest payment due upon the mortgage, but that the default in payment of interest and the subsequent foreclosure was a scheme or device by which defendant and other stockholders in the corporation were to be "frozen out" of their interests in the corporation. Defendant admitted that plaintiff was employed by him as an attorney to bring a suit against the purchasing stockholders to set aside the deed of foreclosure. Plaintiff and defendant differ only as to the terms of the contract of employment, which was verbal.

Plaintiff testified: "They (defendant and his father) thought if a suit was brought to tie the plant up in its present condition, that the stockholders—those that had purchased it—would come to them for a compromise, and pay them some of their money; their object being to keep the packing-house folks, who had bought the plant, from re-organizing and re-incorporating under the law; wanted them to meet them for a compromise, and get some of their money that they said they had lost; and they wanted to know if I would bring such a suit. I said, I don't know; I would hear all the facts. They reiterated that they wanted a suit brought, simply to tie up the packing plant, so that there could not be a re-incorpora-

tion of the stockholders that had bought it; and that they thought
that they could in that way effect a compromise. Well, I says, if
that is all you want done, I will bring the suit for one hundred
dollars, and I think we can tie it up, so that there would be nobody
willing to purchase the stock and go into a corporation that was
in litigation; they both spoke up and said, that is satisfactory to us;
we want you to get right at it. I went to the office and worked until
about eight o'clock and came down with my skeleton and dictated
it to her (the stenographer), and she copied something like three
or four copies of the statement I had; I then read it to the Manns,
and they said that was just exactly what they wanted. I then
prepared a *lis pendens*—that is, a notice of suit—to file in the
recorder's office; these papers were taken to the sheriff's office, and
the sheriff served them that night, on the various stockholders of
the corporation, including the trustees that had foreclosed it; and
we got through, I think, about ten minutes to twelve o'clock. When
that was done, they said the banks are now closed, we will come
to your office Monday morning, and pay you a hundred dollars.
I said, that will be all right, gentlemen.''

The testimony of two of plaintiff's witnesses tends to corroborate
his testimony that he was to be paid a fee of one hundred dollars
for merely filing the papers in the suit.

Defendant testified respecting the terms of the employment: ''I
went up to Mr. King's office that morning, and told him I wanted
him to take a case against the packing company; and he agreed to
handle the case; and I told him the facts of the case, all I could
give him, there was a good many of them; and I went over them
again; we went over the case together; and he agreed to take the
case for a hundred dollars, if he lost the case—he was to fight it
through the circuit court—and two hundred dollars, if he won it.
He also agreed at the time, to get the books in court; that was the
principal part of it; we had to prove from it in order to beat the
case. The books were never gotten into court. So I brought my
father up after lunch, about twelve-thirty, and he rehearsed the
case to father, and he (father) said he stood good for the fee; and
he went to work and framed the petition at that time. He was at
work most every time I was up there that afternoon on the petition,
writing it. He said I had a good case; that he would get the books
in court and clear it up. The first I ever knew of the dismissing
of the case, or of that petition, I got summons that I was sued for
an attorney's fee; that is how I came to find out the case was dis-
missed; I went to inquiring about it at the clerk's office. I thought I
had a case in court all the time, until I got this summons; then,
of course, I didn't know until I inquired.'' Cross-examination:

"Q. You went on past his office every day; any time you desired to know anything about the case, you walked upstairs and saw Mr. King, didn't you? A. Oh, yes.

"Q. You did go up there frequently to see him, didn't you? A. Yes, sir.

"Q. You were up there dozens of times, weren't you? A. Yes, sir.

"Q. During the time the suit was pending? A. Yes, sir.

"Q. After the first demurrer was sustained, he told you when you were up there when he was preparing the second petition—you were there, weren't you? A. Yes—well—yes, he was making preparations to prepare the second petition.

"Q. You knew that would come up at the May term of court, didn't you. A. Well, yes, I understood it would.

"Q. Why didn't you go to Mr. King's office during the May term of court and ask about your case? A. I went up to his office pending the trial rather frequently, to make sure that Mr. King would know about the case, and the proper line on it; after I was satisfied that he knew the case, why I let him handle it himself.

"Q. Why didn't you go to Mr. King's office then, as you had been doing before that? A. Well, there wasn't any use in racking around there; I had given him the facts in his office. I was very handy there; if he wanted me, he could get me.

"Q. Is that. the only answer you can make the jury, why you didn't go up there, A. Why, I didn't think it was necessary."

W. T. Mann, defendant's father, testified: "Q. Did Mr. King and you and your son have a conversation about this case, about the fee? A. Well, I was in a hurry; didn't talk much about the case; but he told me that he would take the case through the circuit court, thresh it out there, and get the books into court; and if he lost, he wanted a hundred dollars for losing; and he wanted two hundred if he won it—and wanted me to stand good for the fee. Said we had a good case; and I was in a hurry and went right on. I come in about six or six-thirty; and when the petition was typewritten, Mr. King read it to me, and asked me what I thought of it; I says, that sounds good to me."

Defendant's suit to set aside the mortgage foreclosure was filed by plaintiff. as defendant's attorney, in the Circuit Court of Vernon County on the last day of service (the day of the employment) before the February, 1915, term of said court. On February 8, 1915, the first day of the February term of court, the defendants in that suit filed a demurrer to the petition. On February 11, 1915, the fourth day of the February term, defendants' demurrer to the petition was sustained, and the court granted leave to plaintiff in that suit (defendant here) to amend his petition on or before April

1, 1915. Plaintiff King, as attorney for John E. Mann, filed an amended petition in his behalf within the time granted by the court. On May 10, 1915, the first day of the succeeding May term of court, the defendants in that suit filed a demurrer to the amended petition. On May 14, 1915, the fifth day of the May term of court, the following order was entered of record in said action: "Now on this day comes the plaintiff by attorney and says he will not further prosecute this cause, but voluntarily dismisses same. Wherefore, it is ordered and adjudged by the court that the plaintiff take nothing by his writ herein and that defendants go hence without day and that defendants have and recover of and from plaintiff their costs in this behalf expended and execution issue therefor."

Plaintiff's testimony, which is not contradicted by defendant upon the record, is that he argued before the court the demurrer to the amended petition, and that before voluntarily dismissing the case, the court intimated that he was going to sustain the demurrer, and, rather than see the rights of his client forever foreclosed by a final judgment, he voluntarily dismissed the action, with the knowledge that his client might commence a new action within one year from the date of such dismissal. Relative to the amended petition, plaintiff testified: "The court gave me permission to amend my petition on or before the first day of April; that was prior to the May term of the circuit court. I filed that petition, stating the same facts, practically, with a few others that I considered general—because all the facts I got from them I incorporated in the petition at the May term. Now I had no facts, except what might be alleged in the petition; in fact, I had no testimony that they had furnished me, at all; they had failed to furnish the books, as they agreed; I had no testimony at all, except that. I had nothing to proceed with, because I had no further facts, nor even any clients present; and I couldn't try a case without clients. I then got on to the fact that, if I would take a voluntary dismissal or nonsuit, they could bring another suit within one year from that time; and that it wouldn't be a bar to another suit. Knowing that, I asked the court to permit me to dismiss it."

I. Defendant's appeal herein is from the order of the trial court granting a new trial. The record before us does not recite the reason or ground given by the trial court in sustaining plaintiff's **Grounds of New Trial** motion for a new trial and in granting a new trial. Hence, the order *nisi* must be sustained if it ought to have been sustained on any of the grounds set forth in the motion for a new trial. [Metropolitan Lead & Zinc Mining Co. v. Webster, 193 Mo. 351, and cases there cited.] Looking to the motion for a new trial, we find that it sets forth, among others, the

following grounds: "3. Because the verdict is against the weight of the evidence in the case. . . . 6. Because the verdict is the result of passion and prejudice."

Our statute (Sec. 1453, R. S. 1919) provides: "In every case where there has been a mistake or surprise of a party, his agent or attorney, or a misdirection of the jury by the court, or a mistake by the jury, or a finding contrary to the direction of the court, or a fraud or deceit practiced by one party on the other, or the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the party has a just cause of action or of defense, it shall, on motion of the proper party, grant a new trial, and, if necessary, permit the pleadings to be amended on such terms as may be just."

Section 1454, Revised Statutes 1919, provides: "Only one new trial shall be allowed to either party, except: First, where the triers of the fact shall have erred in a matter of law; second, when the jury shall be guilty of misbehavior; . . ."

It may have been that the trial court was of the opinion that the verdict herein was against the weight of the evidence. While the statute (Section 1454) makes it the duty of the trial court to specify of record the ground or grounds on which a new trial is granted, nevertheless, if the order of the court does not so specify the ground or grounds upon which a new trial is granted, it will be sustained if any ground set out in the motion is sufficient. [Mining Co. v. Webster, supra.] Furthermore, the trial court has the right to grant to either party one new trial, in either a law or equity case, if it is satisfied that the verdict or finding is against the weight of the evidence (Hurley v. Kennally, 186 Mo. 225), and that, too, regardless of the number of new trials that may have been granted to either party upon other and different grounds. [Kreis v. Missouri Pacific Ry. Co., 131 Mo. 533.] Such power is exclusively discretionary in the trial court and will not be interfered with on appeal, at least in the absence of an abuse of discretion. However, we have ruled that where a verdict has once been set aside on the ground that such verdict was against the weight of the evidence, a second verdict cannot be set aside under the statute on that ground. [Van Loon v. Railway, L., H. & P. Co., 271 Mo. 209.]

Appellant insists that plaintiff has been once awarded a new trial on the ground that the verdict was against the weight of the evidence, and, hence, the order granting a new trial from which this appeal is taken cannot be sustained upon that ground. However, the record before us does not support this claim of appellant. True, on October 8, 1915, and again on February 6, 1917, the circuit courts of Vernon and Bates counties, respectively, awarded plaintiff

a new trial after verdict and judgment against him, but the record here does not show the reasons or grounds (if any) given by those trial courts in granting the respective new trials. They may have been granted because the respective courts believed that the triers of the fact had erred in a matter of law or the. jury had been guilty of misbehavior. We do not know from the record before us. It is also true that the Kansas City Court of Appeals (199 S. W. 705), on the first appeal, affirmed the order of the trial court because the trial court *may* have sustained the motion for a new trial upon the ground that the verdict was against the weight of the evidence, that being *one* of the grounds of the motion for a new trial. But that was not tantamount to a finding (absent an e ntry of record) that the trial court granted a new trial upon that ground. There being nothing in the record before us to show that a new trial has ever been granted upon the ground that the verdict was against the weight of the evidence, and such ground being in the motion for new trial before us on this appeal and the grounds of the trial court in sustaining such motion not being specified of record, we may properly assume that it may have been granted on that ground, which is one solely and peculiarly within the province of the trial court. [Hoepper v. Hotel Co., 142 Mo. 378.] Furthermore, if the trial court is satisfied that the verdict is the result of passion and prejudice (and that was also a ground of plaintiff's motion), it is the court's duty to grant a new trial, and such discretion will not be interfered with unless abused. [Rigby v. Transit Co., 153 Mo. App. 330.] The presumption obtains (absent a showing to the contrary) that the trial court did not violate the statute in granting a second new trial. [Oliver v. Railway Co., 211 S. W. 699; Hoepper v. Hotel Co., supra.] It follows that the order *nisi* granting a new trial must be affirmed.

II. It remains for us to determine whether the cause should be remanded to the circuit court (from whence it comes on appeal) with directions to enter a judgment for plaintiff (respondent). It is right and proper that litigation should be ended by the judgment of the appellate court, if such action of the appellate court is consistent with established legal principles and orderly procedure as prescribed by statute and the Federal and State Constitutions. It is clearly apparent from the history of the instant litigation that the expense of this litigation (by way of court costs, printing of abstracts and briefs, and attorney's fees, not to speak of the time and cost to the State of jurors and judicial officers) far exceeds the pecuniary sum in litigation. It would, therefore, be our judgment and determination to end this law suit if we may do so according to established law and procedure.

The Springfield Court of Appeals (235 S. W. 506) held, upon the record now before us and taking the defendant's version of the contract of employment and transactions involved as true and eliminating the oral evidence of plaintiff, that there is no legal defense to this action; in other words, that court held that the plaintiff had performed his contract and earned his fee, even upon defendant's theory of the case, and that a judgment should be directed in favor of plaintiff for $100, with interest and costs. The conclusion of that court is arrived at upon the reasoning that the sustaining of the demurrer to the first, original, petition to set aside the foreclosure sale (prepared by plaintiff as defendant's attorney) was a final determination of that action, entitling plaintiff to his fee, and, although he filed an amended petition by leave of court and thereafter dismissed the action, such final determination of defendant's rights was not thereby affected, because that Court of Appeals finds that no new substantial facts were alleged in the amended petition.

The Kansas City Court of Appeals (207 S. W. 836), on the other hand, held, upon substantially the same record, that whether plaintiff performed the contract of employment is a question of fact for the jury. Therein lies the conflict of opinion upon which the case is certified to this court. In discussing the matter, the Kansas City Court of Appeals, speaking through TRIMBLE, J., said: "Even if the contract be as defendants claim it was, we are of the opinion that, if plaintiff in this case embodied in the petition to set aside the sale all the facts he had or was furnished, and that he then appeared and did all he could to get the court to overrule the second demurrer, but was unable to do so, and the court had determined and was about to sustain the demurrer, then plaintiff herein performed his part of the contract, and is entitled to his fee of $100, even though he dismissed the suit before the judgment on the second demurrer was formally entered. In these circumstances, the dismissal of the case was not an abandonment thereof before the object of his endeavor and the purpose of the contract was obtained, namely, to obtain the judgment of the circuit court upon the right of the plaintiffs in that suit to have the foreclosure set aside. But it will be observed that not only did the terms of the contract rest in parol and were in dispute, but plaintiff's explanation of why the order of dismissal was made after the second demurrer was filed is also wholly in parol, and not only is not admitted, but the records of the court appear to be the other way. The record says plaintiff voluntarily dismissed the suit. But his explanation shows that such voluntary action did not arise until after he had vainly sought to get the court to rule otherwise, and that he then dismissed the case in order that plaintiff in that case could bring

another. Hence, it seems to us that the peremptory instruction to find for [against?] the defendant John E. Mann was tantamount to telling the jury either that the contract was as plaintiff claimed it was, or that plaintiff's evidence as to the dismissal of the case after the second demurrer was filed must be believed. These matters were not mere collateral facts concerning which one-party had testified and there was no evidence to the contrary. They were facts necessary to be determined in order to entitle plaintiff to recover. Defendants claimed the plaintiff had voluntarily abandoned the case before it was finally determined, and the record of the court apparently supported that theory. If he did abandon it, and the contract was as defendants say it was, then he was not entitled to recover. [Blanton v. King, 73 Mo. App. 148, 150.] To meet this, plaintiff by oral testimony attempted to prove that his dismissal was after he had, in fact, obtained the court's judgment in the case, and that the dismissal was solely to prevent the judgment the court was about to render from becoming a finality. But whether he did endeavor to obtain a favorable judgment on the demurrer before dismissing the case was for the jury. The instruction, however, in effect compelled the jury to accept it as true. This was error.''

The original and amended petitions, prepared and filed by plaintiff, as attorney for defendant, in defendant's action to set aside the foreclosure sale, are set out *in haec verba* in the record before us. They are lengthy, and it would be an act of supererogation to copy them herein. Suffice it to say that we have carefully compared the contents and allegations of the two petitions and find that the amended petition contains the following additional allegations of fact not embodied in the first or original petition: ''Plaintiff further states that said pretended conveyance (deed of trust) was made as aforesaid by defendants without any authority or sanction of law whatever in this, to-wit, that no meeting of said board of directors in their corporate capacity was ever held by the board of directors authorizing the execution of the pretended deed of trust, and that said pretended conveyance is absolutely void and of no force and effect. . . . Plaintiff further states that the said defendants had money abundantly in their possession to pay off and discharge all interest that was lawfully due, which said directors had collected from plaintiff and the other stockholders. . . . Plaintiff further states that he stands now ready and offers to pay into court the full amount that was paid [by the purchaser at the foreclosure sale], including all costs incident to said pretended foreclosure.'' So that it is apparent that the amended petition embodied some allegations of fact not set forth in the original petition. Whether those additional allegations would have satisfied the mind of the trial court that the amended petition stated a cause of action,

whereas the allegations of the original petition were deemed to be insufficient, we do not know, unless we accept as true plaintiff's testimony that he argued the demurrer to the amended petition to the court and the court intimated that he would sustain the demurrer to the amended petition. While plaintiff's testimony on that matter is not contradicted by defendant's testimony, yet it is uncorroborated. Neither is it admitted as true by defendant. The jury may have disbelieved plaintiff's testimony on that circumstance and may have believed, on the other hand, that plaintiff had voluntarily abandoned defendant's action, which theory is apparently supported by the record of the circuit court. We are inclined to the view expressed by the Kansas City Court of Appeals that the question was one of fact for the jury. For us to direct the entry of a judgment in favor of plaintiff herein would amount to a substitution of our own judgment on an issue of fact for that of the jury, who, in this kind of an action, are made the exclusive triers of the facts by both our State Constitution and our Code of Civil Procedure. [Sec. 28, Art. II, Mo. Const.; Sec. 1398, R. S. 1919.] As a general principle, the terms of the contract of employment between attorney and client, whether the services were rendered and their value, and whether the attorney was justified in withdrawing from the case, are all questions of fact for the jury. [4 Cyc. 1004, and cases there cited.] In Blanton v. King, 73 Mo. App. 148, it is held that, where one contracts for an indefinite time until a particular service is accomplished, he cannot recover where he wilfully and without cause abandons the work before the expiration of the time for the performance of the service; and this rule is held to be especially applicable to the engagement of an attorney by his client.

While, because of the long duration and expense of this litigation and the comparatively small pecuniary amount involved, we are reluctant not to end the litigation by directing the trial court to enter a final judgment, yet we are satisfied that we cannot do so, upon the record before us, without violating the orderly rules of procedure prescribed by the statute and our State Constitution and substituting our own judgment on an issue of fact for that of the constituted triers of the facts.

It follows that the order of the circuit court granting a new trial must be affirmed and the cause remanded for retrial, and it is so ordered. *Lindsay, C.*, concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.*, absent.