Walter LIDDLE, Jr., Respondent,

v.

COLLINS CONSTRUCTION COMPANY,
a Corporation, Appellant.

No. 44129.

Supreme Court of Missouri, Division No. 2.

Nov. 14, 1955.

---

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for appellant.

N. R. Fischer, Arthur C. Popham, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell, Trusty & Green, Kansas City, of counsel, for respondent.

BOHLING, Commissioner.

This is an appeal by the Collins Construction Company, a corporation, defendant, from an order granting Walter Liddle, Jr., plaintiff, a new trial in an action for $50,000 damages for personal injuries. Plaintiff's motion for new trial was sustained on the stated grounds that the verdict was against the greater weight of the credible evidence, and for the giving of two of defendant's instructions.

Defendant, Collins Construction Company, had the general contract to erect a large one story, hip roof, factory and storage building for the International Harvester Company at Kansas City, Kansas. Vogt & Conant Construction Company of Cleveland, Ohio, held the contract for the steelwork. Plaintiff, a steelworker, was an employee of Vogt & Conant. He was not an employee of defendant.

Plaintiff was injured on or about September 5, 1950, when a steel column and crossbeam fell while erecting the steelwork for the roof. All steel columns for the hip roof were not of the same length.. There

was testimony that the column in question was a 10-inch H-beam, 30 feet long, and the crossbeam was a 16 or 20-inch H-beam, about 42 feet long. The steel that fell weighed over a ton. Purlins, 6 to 8-inch channel irons, flat with a web on each end, were to form the sheeting for the roof. They were approximately 20 feet long and weighed 200 to 250 pounds.

The steel columns were to rest on underground concrete footings or piers, 14 inches square and of an average depth of 5 or 6 feet, constructed by defendant. There were approximately 400 such piers. Two 1-inch anchor bolts, 18 inches long, were imbedded in each pier while the concrete was "wet" and held in place until the concrete "set up," the bolts projecting 6 or 7 inches above the pier. Each steel column had a flat base plate, 12 inches square and ¾ inch thick, with holes for the anchor bolts. The threaded part of the bolts would project about an inch or more above the base plate after the column was fastened to the pier.

The testimony established that it was difficult and impractical, due to the settling and shrinkage of the wet concrete, to pour the footing or piers to the proper elevation to receive the steel. To attain the proper elevation a "grout cap" was added by defendant to the pier after the concrete settled or cured. The grout caps for the building were 12 inches square and, while the thickness varied, defendant's testimony was that they were ¾ths to 1½ inches thick but plaintiff had testimony that the cap in question was about 3½ inches thick. Plaintiff had testimony that grout caps for steelwork had to be of concrete—cement, sand and fine rock. Defendant's testimony was that the grout caps were to be one part cement and three parts sand. The mixture was added to the top of the pier and worked so the pier attained the proper elevation.

Lime is not supposed to be used in making grout caps. They are to be made out of concrete to keep them from being crumbly.

Vogt & Conant used a large crane in erecting the steel. The cab of the crane would be placed in the center of a "bay." A bay on this project was a rectangle made

by eight upright steel columns. The columns were 20 feet apart. The length of the boom of the crane was estimated to be 100 feet. A ⅞th-inch steel cable worked through the boom. The cable had a weight, a "headache" ball, weighing 100 to 150 pounds, and a hook at its end.

At the time of the occurrence, plaintiff and Sanford Kidd, another steelworker, had bolted a steel column onto the pier involved and had secured a crossbeam with erection bolts in a temporary position to the top of said column and to an adjoining column. Part of the crossbeam extended beyond the column. Plaintiff was astraddle the crossbeam at the 30-foot column and Kidd was approximately 18 feet away, near the column on the lower end.

The crane was in the act of lifting a purlin when plaintiff felt the steelwork underneath him begin to fall to the north. He jumped for the purlin but did not reach it or the cable and fell to the ground and sustained injuries. Kidd jumped and caught the cable and purlin and was lowered to the ground.

Joseph H. Gautier, superintendent for Vogt & Conant, immediately investigated to ascertain the cause of the steel falling. He testified as follows: The grout cap under the column that fell was about 3½ inches thick and was made of brick mortar, masonry all the way through. The column had been standing for about 15 or 20 minutes. About ⅔rds of the grout cap had crumbled on one side, which caused the column to lean and fall to that side. The nut on the opposite side of the base plate had stripped off the threads of the anchor bolt. The erection bolts on the other column sheared off and that column did not fall. Brick mortar or masonry has lime in it, will dry hard but is crumbly, and does not hold together like concrete. Part of this grout cap was above the ground and some of the masonry had "busted out" and fallen on the ground. He picked up three pieces of the masonry, about 3 or 4 inches thick. They were brittle and he easily broke them with his hand. He found no concrete in the cap. He showed the pieces to defendant's su-

perintendent, who admitted it was brick mortar. They inspected other grout caps, found the cap to the north was made out of the same material, and it was replaced with a concrete cap.

Raymond Grove, defendant's witness, testified that he was carpenter foreman and in charge of putting the grout caps on the concrete footings; that this particular grout cap was mixed by the hod carriers on the job as brick mortar with lime in it; that it was one part cement, one part lime and three parts sand, which was sometimes used as grout where the mixture was not specified.

Edgar E. Carroll, defendant's witness, was defendant's construction superintendent on the job. He knew men would work on the steel columns and if a grout cap was weak or insufficient and crumbled, it might cause the steel to fall and endanger the steelworkers. He stated they were using one part cement and three parts sand, ready-mixed concrete and not mortar, for the grout caps. He did not witness the mixing of the grout cap in question. Concrete is used because that is called for, is the accepted practice, hardens like a rock, does not crumble, and does not let the steel fall.

Uriel Seiden, a consulting engineer, was defendant's expert witness. He testified that a 1-inch grout cap would support the same weight as the concrete pier; that grout is not supposed to contain lime; that normally grout consists of one part cement and three parts sand, and is stronger than mortar; that construction men know grout caps have to withstand pressures and strains, including cables striking the steel, occurring during construction work, and that too much pressure generally causes a concrete grout cap to crack along a 45 degree plane.

Defendant's theory, supported by evidence, was that the anchor bolts securing the column to the pier were not securely fastened; that the cable, with the headache ball, while lifting a purlin, struck the crossbeam causing the steel column and crossbeam to shake and fall. The threads

on the anchor bolt in the column's base plate, opposite to the direction of the fall, were stripped and the nut was off of the bolt, and the threads on the other anchor bolt had been stripped but the nut had not come off. There was testimony that the bolts are designed so that, when the nuts are securely fastened, they will snap or break before the threads holding the nut are stripped. The cable suspending the weight striking the crossbeam caused the steel to tilt and get out of equilibrium, concentrated the weight on one edge, a knife-like edge, of the grout cap, and caused that portion of the cap to collapse and the steel to fall.

Plaintiff and Sanford Kidd testified that the column had been fastened to the pier, the anchor bolts having been "tightened down tight"; that the cable did not strike the steelwork before it fell, and Kidd testified if the cable his the steelwork in the usual way it would not knock it over.

Defendant's counsel argues that granting a new trial because the verdict is against the weight of the evidence is now properly reversible by an appellate court just the same as any other legal act on the part of the trial court is reversible, stating there must have been some particular reason why § 510.330 (statutory references are to RSMo 1949, V.A.M.S., unless otherwise indicated), enacted Laws 1943, p. 388, § 115, specifically provides that only one new trial may be allowed on said ground. Defendant cites § 1169, R.S.1939; In re Wilson, 95 Mo. 184, 188, 8 S.W. 369, 371; Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383, 386 [2–7]. Under the statutes prior to the civil code of 1943 only one new trial was allowable on the ground the verdict was against the weight of the evidence, and § 510.330 effected no change in the law on the issue. §§ 1125, 1168, 1169, R.S.1939; Van Loon v. St. Joseph R., Light, Heat & Power Co., 271 Mo. 209, 195 S.W. 737, 739; King v. Mann, 315 Mo. 318, 286 S.W. 100, 103 [4]; Jones v. Reilender, Mo.App., 67 S.W.2d 813, 814 [2].

Like rulings of trial courts are not reversed unless the court has clearly abused or arbitrarily exercised its discretion; and where plaintiff secures a new trial on the stated ground the appellate court reviews the record to ascertain if there was substantial evidence to sustain a verdict for plaintiff. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 300 [9]; State ex rel. Spears v. Hughes, 346 Mo. 421, 142 S.W.2d 3, 5 [3]; Hoppe, Inc., v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 349 [3, 4], 23 A.L.R.2d 846; Graves v. Atchison, T. & S. F. R. Co., 360 Mo. 167, 227 S.W.2d 660 [1–3], where plaintiff failed to make a submissible case. Defendant's cases are not out of harmony herewith. The issue calls for a consideration of the evidence and the legitimate inferences therefrom favorable to plaintiff. Haven v. Missouri R. Co., 155 Mo. 216, 230, 55 S.W. 1035, 1040; Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 302 [24]; Kopp v. Traders Gate City Nat. Bk., 357 Mo. 659, 210 S.W.2d 49, 50 [1, 2]; Rosenblum v. St. Louis Public Service Co., Mo. App., 242 S.W.2d 304, 305 [1].

Defendant says plaintiff's submission was at variance with his pleadings and proof. Plaintiff predicated a recovery in the conjunctive, among other things, on defendant's failure to exercise ordinary care to provide a reasonably safe grout cap in that defendant "negligently, if so, placed and used material for said grout cap that was unusually soft and insufficient and dangerous and not reasonably safe and was likely to give way and cause the steel upon it to fall when put in service for its usual and intended use and purpose, if so," and that defendant knew or in the exercise of ordinary care should have timely known of said facts et cetera, "and if you find that the aforesubmitted condition of said grout cap and the aforesubmitted negligence of defendant either directly caused or directly contributed to the said falling of said steel," et cetera, the verdict should be for plaintiff, although the jury find that some other cause or causes might have concurred with the

aforesubmitted negligence of defendant and contributed to such falling. We think the submission was within the proof, hereinbefore set forth, and the charge that defendant negligently "failed to place concrete and materials in said work which would reasonably support said steel and which whould be reasonably safe for said purpose and for the plaintiff and other workmen, but negligently placed soft and insufficient material thereat, and as a direct result of the negligence or directly contributing negligence of defendant the same collapsed, causing plaintiff" to be injured.

■ Plaintiff received payments under a Workmen's Compensation Act. The record does not disclose whether they were made under the Missouri or Kansas law. Plaintiff lived in Missouri. The statutes of Missouri, § 287.150, authorize an employer liable under the act to recover against a third person tort-feasor for an injury to the employer's employee. Kansas has a similar statute, § 44-504, G.S.1949. Defendant says, since the only concurrent negligence shown was that of plaintiff's employer, plaintiff may not recover unless defendant's negligence was the sole negligence; and that to permit plaintiff to recover, as submitted in plaintiff's instruction, for the concurrent negligence of defendant and plaintiff's employer would allow plaintiff's employer to profit by its own negligence. General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S.W.2d 442, 445, was an action by an employer, as subrogee, under § 287.150, supra. The court considered, in part, that the right of the employee to sue and recover against the negligent third party remained unimpaired by the act; and in the event the employer sued he succeeded to the employee's whole claim against the third person "by statutory assignment rather than strict subrogation"; and the concurrent or contributory negligence of the employer was "wholly immaterial as a defense or in diminution of the amount of recovery." And, 55 S.W.2d loc. cit. 446: "It is evident that, if the injured employee chooses to bring his own action against the negligent third party, in part at least for the benefit of the employer,

or if he and the employer join in such action, it would not be competent for such negligent third party to interpose as a defense the negligence of a joint tortfeasor, though it be that of the employer." See American Veterinary Laboratories v. Campbell Paint & Varnish Co., 227 Mo. App. 799, 59 S.W.2d 53, 61 [11]; Zesch v. Abrasive Co., 354 Mo. 1147, 193 S.W.2d 581, 586; State ex rel. Missouri Pac. R. Co. v. Haid, 332 Mo. 616, 59 S.W.2d 690, 691 [1]; 71 C.J. 1752, § 1611; 58 Am.Jur. 818, §§ 359, 366. Defendant's contention is overruled.

■ A contractor is liable for his or his servant's negligence causing injury to the servant of another contractor engaged in work on the same premises. Defendant does not contend otherwise. Osby v. Tarlton, 336 Mo. 1240, 85 S.W.2d 27, 30; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608, 612; Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958, 960 [2, 3]; 57 C.J.S., Master and Servant, § 610, p. 381; 65 C.J.S., Negligence, §§ 65, 95, pp. 556, 611; 27 Am.Jur. 530, § 52; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 868; 2 Shearman & Redfield, Negligence, 1941 Ed., 680, § 272.

■ We do not agree with defendant that plaintiff failed to make a submissible case. The jury may or may not believe defendant's witnesses. There was testimony warranting findings that defendant knew or, in the exercise of ordinary care, should have known that steelworkers would work on the steelwork; that grout caps had to sustain the weight of the steel and men working thereon and might be subject to strains when struck by the cable moving other steel; that grout caps should be of concrete; that the grout cap in question was made of masonry mortar, and was not hard and rocklike as concrete grout caps are hard and rocklike but was soft and could be crumbled by hand; that it was not a reasonably safe support for the steelwork and steelworkers thereon; that because of its unsafe condition, the grout cap gave way soon after the weight of the crossbeam was added, permitting the steel-

work to fall, and that plaintiff was proximately injured thereby, whether or not on the occasion in question the steelwork was subject to the strain of the cable moving steel striking it.

■ The foregoing disposes of the several contentions presented in connection with the first point in defendant-appellant's brief. The point is subject to criticism for failure to comply fully with 42 V.A.M.S. Supreme Court Rules, Rule 1.08 (a) (3), (c). We note that plaintiff-respondent had recourse to defendant's printed argument in seeking the particularization in statement of the alleged error and the reason or reasons for believing the court erred. State Mut. Life Assur. Co. of Worchester, Mass. v. Dischinger, Mo., 263 S.W.2d 394, 398 [2]; Conser v. Atchison, T. & S. F. Ry. Co., Mo., 266 S.W.2d 587, 589 [1–3]; Wipfler v. Basler, Mo., 250 S.W.2d 982, 985 [4]. The argument as well as the statement should have specific page references to the transcript.

■ The trial court considered defendant's instruction No. 8 prejudicial. It read: "The court instructs the jury that if you find and believe from the evidence that the defendant placed under the grout cap mortar of sufficient strength to hold the upright column and any other weight which would be attached thereto and to sustain any movement of the column in the usual and ordinary course of construction, and if you further find and believe from the evidence that the beam was contacted by the cable on the crane, which was carrying a purlin, and that as a direct result of such contact, the column and the attachments thereto fell and the mortar was thereby crushed, and if you further find and believe from the evidence that said mortar would not have been crushed unless the cable came in contact with the beam in the manner aforesaid, then you are instructed that the plaintiff cannot recover and the verdict shall be for the defendant."

The instruction seemingly follows defendant's contention that plaintiff may not recover if the employer were concurrently negligent. The testimony was that cables moving steel come in contact with erected steel in steel construction work. It was not established that the contact mentioned by defendant's witnesses was out of the ordinary. The instruction is so worded that it may be construed to authorize a verdict for defendant if the cable carrying the purlin came in contact with the steelwork in the usual progress of the work and such contact was a concurrent cause of the grout cap crumbling, notwithstanding the jury also might find that the grout cap was not reasonably safe in such circumstances. We conclude the trial court ruled correctly.

■ Defendant's instruction No. 7 placed an absolute duty on plaintiff to obtain reasonable medical care; viz.: "The court instructs the jury that the burden rested upon the plaintiff to reduce his disability, if any, by reasonable medical care * * *." The verdict for the defendant on the merits discloses that the jury did not reach a consideration of the instruction. Plaintiff's duty was to exercise reasonable care in securing medical attention and not aggravate the injury by neglect in this respect. Defendant's, as well as plaintiff's cases, are to this effect. Glasgow v. Metropolitan St. R. Co., 191 Mo. 347, 370(VI), 89 S.W. 915, 922(6); Sneed v. Shapleigh Hardware Co., Mo.App., 242 S.W. 696, 700; Bailey v. St. Louis-San Francisco Ry. Co., Mo.App., 20 S.W.2d 952, 955 [3]; Adams v. Carlo, Mo.App., 101 S.W.2d 753, 756 [2]. Defendant no doubt will redraft the instruction.

The order granting a new trial is affirmed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.